# THOMAS CREAMER *vs.* GEORGE STEPHENSON.

An indemnity bond stipulated, among other matters, that the obligor would indemnify the obligee against the claim of a third party on a judgment on which *an attachment* had been issued and laid in the hands of the obligee, and against all costs and charges to which the obligee "*may be subjected in resisting said claim,*" and refund all sums of money he "*may be legally required to pay* on account of said claim." A judgment by default was recovered in the attachment case against the obligee, which he paid before execution and then sued the obligor on this bond. HELD:

Creamer *vs.* Stephenson.

1st. That it was competent for the plaintiff to prove by *parol* that, at the time this bond was delivered, the *obligor* agreed to have the attachment case *defended by his own counsel,* the bond being silent as to the *manner* or means to be employed *"in resisting,"* the claim, a parol agreement as to how and through whose agency the resistance was to be made, is not inconsistent with, or contradicting to, the bond.

2nd. The obligee was not bound to wait till an *execution* was issued before paying this judgment; it was the judgment which fixed his liability, and if he had withheld payment till execution was levied, the obligor might reasonably have complained of such unnecessary accumulation of costs.

It is not admissible to vary or contradict a written agreement by parol, but such evidence is admissible in the case of a latent ambiguity, or to prove any collateral, independent fact, about which the agreement is silent.

Though a patent ambiguity cannot be explained by extrinsic evidence, yet where a question arises as to the general intention of the parties concerning which the instrument is not decisive, proof of independent facts collateral to the instrument may be properly admitted.

Parol evidence may be given of collateral and independent facts which tend to support a deed, provided it is not offered to vary the agreement and is consistent with the deed.

APPEAL from the Superior Court of Baltimore city.

*Debt* brought, on the 30th of August 1856, by the appellee against the appellant, upon a bond of indemnity, given by the defendant to the plaintiff, in the penalty of $2000, dated the 3rd of December 1853, and in which are the following recitals and conditions:

"Whereas, the above bounden Thomas Creamer, by deed bearing even date with these presents, hath conveyed to said Stephenson a certain tract of land, situated on the Tide Water canal in Harford county, and hath covenanted to warrant and defend the same to the said Stephenson and his heirs, against all persons claiming the same or any interest therein, or any part of the purchase money thereupon, by, through, or under him, the said Thomas Creamer, or by, through, or under a certain John T. Adams, by whom said land was conveyed to said Creamer, except three several sums of money amounting in the aggregate to $3028.28, which said Stephenson has agreed to pay on the mortgage of said Adams

to Louisa J. Wadsworth, as in said deed is mentioned and provided; and the said Thomas Creamer has especially agreed to indemnify and save harmless the said Stephenson against all the rest and residue of said mortgage debt, and against the claim of a certain Thomas and B. C. H. Phenix, under a mortgage on said land, executed by said Adams, on or about the 12th day of October 1852, *and against the claims of a certain Jacob Tome, on a judgment against said Adams, upon which an attachment has been issued and laid in the hands of said Stephenson, as garnishee;* Now, the condition of this obligation is such, that if the said Thomas Creamer shall in all things, well and faithfully perform all the covenants made by him in the deed aforesaid, and indemnify and save harmless the said Stephenson against all and singular the claims aforesaid, *and against all costs and reasonable charges to which he may be subjected in resisting said claims*, and shall refund to said Stephenson all such sums of money as he, the said Stephenson, *may be legally required to pay*, on account of said claims, or upon any other liens upon the land aforesaid, or the purchase money therefor, which may have originated since the date of the said Adam's purchase thereof, from Louisa J. Wadsworth, except the three said sums of money, amounting to $3028.28, which said Stephenson has assumed and agreed to pay as aforesaid, then and in such case this obligation to be null and void, otherwise to remain in full force and virtue in law."

It was agreed that the defendant should plead *nil debet*, and that under that issue either party may offer any evidence which would be competent under any issue, and that all errors in pleading be waived.

*1st Exception.* The plaintiff having stated that he proposed to offer in evidence the bond and the record of a *judgment on attachment*, in the circuit court for Harford county, *in which judgment was recovered against him, and subsequently satisfied*, the defendant, by his counsel, stated that this judgment was obtained against the present plaintiff *by default*, and was in no manner binding on the defendant in the present case, and that he would resist this claim upon the

ground, among other things, that said judgment could have been prevented, if the plaintiff, as garnishee, had defended that attachment suit. The plaintiff then offered in evidence the bond, the execution of which was admitted, and the record in the attachment suit, the defendant reserving exceptions to certain portions of said record. The plaintiff further offered in evidence the sworn statement of Henry W. Archer, which it was agreed should be admitted in evidence as if proved on the stand, subject, however, to all legal exceptions as to the competency of all or any portions thereof. The defendant objected to a portion of this statement, upon the ground stated in the opinion of this court, but the court (LEE, J.) overruled this objection and admitted it with the qualification also stated in the opinion of this court. To this ruling the defendant excepted.

*2nd Exception.* The defendant then objected to the admissibility, in evidence, of a copy of the receipt set forth in the record of the attachment suit, showing payment of the amount of the judgment by Stephenson; on the ground that the same was not the best evidence of the fact of such payment having been made, and was therefore inadmissible to prove such payment. This objection the court overruled and admitted the record as evidence of payment, and to prove that the plaintiff, Stephenson, had paid said judgment, and to this ruling the defendant excepted. (This exception was abandoned in argument in this court.)

*3rd Exception.* Further evidence was offered on the part of the defendant, showing that the attachment was issued by Tome in October 1853, and that judgment, *by default,* was obtained thereon against Stephenson, as garnishee, on the 17th of November 1854, at the November Term of the circuit court for Harford county, and further tending to show that after May 1853, and up to the date of the judgment obtained by Tome against Stephenson, as garnishee, neither Stephenson nor the defendant, Creamer, owed Adams, the defendant in the attachment, any moneys. The defendant also offered in evidence an agreement between the plaintiff and himself, dated the 24th of September 1853, by which Creamer cove-

nanted and agreed to sell the land in question to Stephenson upon certain terms and conditions, which need not be more particularly stated than to say, in certain contingencies, it provided for a bond of indemnity by Creamer against the claim of Phenix, but makes no mention of any claim of Tome. Other evidence was also offered, on the part of the defendant, which need not be stated more particularly than appears in the following prayers, which were then asked by the defendant:

1st. That the terms of the bond sued on, imposed no obligation upon the defendant, Creamer, to employ counsel to aid in defending against the attachment referred to in said bond.

2nd. That the plaintiff having sued upon the bond of the 3rd of December 1853, it is not competent for him to add to or vary the obligations imposed upon the defendant by the terms of that bond, by proof of any verbal agreement or understanding between the parties had at the same time of the execution of said bond.

3rd. That the plaintiff cannot recover in this action unless the jury believe, from the evidence, that he actually paid to Tome, or his counsel, before the institution of this suit, the whole or some part of the attachment claim, referred to in the evidence.

4th. If the jury believe from the evidence, that the plaintiff and defendant entered into the written contract of the 24th of September 1853, on the day of its date, and that afterwards, in October 1853, Tome issued an attachment against Adams, and caused it to be laid in the hands of Stephenson, as garnishee, and that Stephenson, neither at that time nor afterwards, had in his hands any moneys of Adams, nor owed him any; and that afterwards, on the 3rd of December 1853, Stephenson requested and obtained from the defendant the bond of indemnity sued on, and required to be inserted therein a special provision to indemnify him against said attachment claim of Tome, and that at the very time of requiring this clause to be inserted, and down to the 17th of November 1854, inclusive, he, Stephenson, knew he held no moneys of Adams and owed him nothing, and well knew the plaintiff

in that attachment could not recover judgment against him except through his own default in failing to appear to the attachment and plead to the same, and that Stephenson failed to appear thereto and suffered judgment to go against him for want of such appearance, and failed to notify the defendant, Creamer, of said judgment, after the same had been obtained, and for eighteen months afterwards, and that neither Creamer nor his counsel had any knowledge of such judgment until about the time of the institution of this suit, and that Stephenson, on or about the 8th of September 1856, without any execution or threat of execution having been had or made against him, paid said judgment, then that these facts are evidence from which the jury may find that Stephenson did not pay said money in good faith but by collusion between himself and Tome, and if the jury shall so find, then the plaintiff cannot recover in this action.

5th. That by the terms of the bond sued on Stephenson could not call upon Creamer for indemnity on account of the attachment claim of Tome, unless Stephenson was "legally required" to pay the same, and if the jury find from the evidence that Adams, the defendant in that attachment, was not a creditor of either Stephenson or Creamer at the time of issuing of that attachment, or afterwards, and that Stephenson was summoned, as garnishee, to appear to the attachment and failed to do so, and suffered judgment to go against him by default, and that afterwards he did not notify Creamer of the obtention of said judgment, but paid the same without any execution having been issued thereon, or threats of execution made against him, that then Stephenson paid what he was not "legally required" to pay according to the terms of said bond, and he cannot recover in this action.

The *first three* of those prayers were granted by consent, the *fifth* was rejected, and the *fourth* granted with this qualification: "But if the jury shall believe that the defendant, at the time of the execution of the said bond, objected to the plaintiff's employing counsel to defend said attachment suit, and undertook himself to procure said attachment suit to be defended; and shall find that in consequence thereof the

said Stephenson acting without collusion with Tome, took no further steps to defend said suit, and the defendant, Creamer, failed to employ counsel to defend the said attachment suit, and judgment, by default, was obtained against said Stephenson; that such facts relieve the said case from any inference of fraud arising out of the judgment's being obtained by default."

The court then gave the following instruction to the jury: "If the jury shall find the execution of the bond offered in evidence by the plaintiff, and that the plaintiff, Stephenson, paid the attachment debt mentioned in the record offered in evidence, after a judgment had been obtained, and that the defendant, Creamer, had undertaken to employ counsel to defend that suit, and had had time to defend the same, or to furnish Stephenson with his defence, and failed to defend the suit or furnish Stephenson with a defence, and that Stephenson paid the judgment in good faith and without any collusion or understanding with Tome, then, under the condition of the indemnity bond offered in evidence in this case, the plaintiff is entitled to recover for such amount as he may show he has actually paid."

The defendant excepted to the refusal of his *fifth* prayer, to the qualification added to his *fourth,* and to the instruction granted by the court. The verdict and judgment were in favor of the plaintiff for $356.45, with interest and costs, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Coleman Yellott,* for the appellants:

1st. The bond was the only legal evidence of the contract between the parties, and conversations held at the same time of its execution were inadmissible as evidence, because the sole effect of such evidence must have been to prove a parol agreement, inconsistent with the legal purport of the bond itself. The bond is to be construed by the court. It showed that the attachment suit was to be *resisted by Stephenson,* at his

own cost and charge, whereas the parol agreement, sought to be proven, was to the effect that that suit was to be *resisted by Creamer*, and at his cost and charge. On this point, see 6 *H. & J.*, 128, *Bend vs. Susq. Bridge Co. Ibid.*, 411, *Allegre vs. Ins. Co. Ibid.*, 435, *Watkins vs. Stockett.* 5 *G. & J.*, 511, *Butler & Belt vs. State, use of Contee, et al.* 11 *G. & J.*, 457, *Newcomer vs. Kline.* 5 *Gill*, 288, *Young vs. Frost.* 2 *Md. Rep.*, 25, *McElderry vs. Shipley. Ibid.*, 326, *Waters vs. Griffith.* 4 *Md. Rep.*, 498, *Marshall vs. Haney.* 6 *Md. Rep.*, 224, *Mitchell vs. Mitchell.* 9 *Md. Rep.*, 185, *Beall vs. Greenwade.*

2nd. By the qualification added to the fourth prayer, the court, besides engrafting upon the bond a parol agreement inconsistent therewith, which was entirely erroneous, was further in error, because the question of fraud or collusion was one solely for the decision of the jury, upon consideration of *all* the facts of the case, but the court undertook to select part only of the facts, and to say that these, if believed, would relieve the case from any inference of fraud. 7 *Gill*, 367, *Richards & wife vs. Swan, et al.* 1 *Md. Rep.*, 455, *Waters vs. Dashiell.* 6 *Md. Rep.*, 236, *Mayor & C. C. of Balto. vs. Williams.* 10 *Md. Rep.*, 67, *Wilson, adm'r of Owens, vs. Smith. Ibid.*, 77, *Balto. & Ohio R. R. Co. vs. Thompson.*

3rd. The fifth prayer was improperly rejected, because, 1st, the terms of the bond imposed upon Stephenson the duty of "resisting said claim;" 2nd, the bond did not oblige Creamer to refund until Stephenson had been "*legally required* to pay" after so "resisting" said claim. 6 *H. & J.*, 411, *Allegre vs. Ins. Co.* 5 *G. & J.*, 511, *Butler & Belt vs. The State.* 12 *G. & J.*, 36, *Hall vs. Creswell.* 1 *Md. Rep.*, 203, *Dorsey vs. Dashiell.* 2 *Md. Rep.*, 326, *Waters vs. Griffith.* 3 *Md. Ch. Dec.*, 211, *McKim & Kennedy vs. Mann.* Act of 1715, ch. 40, secs. 3, 7. 15 *Verm.*, 683, *Judevine vs. Pennock.* 1 *Pet. C. C. Rep.*, 132, *Massey vs. Schott et al.*

4th. The instruction granted by the court is liable to the same objection urged under our first point. It allowed the

jury to consider parol evidence inconsistent with the legal purport of the bond itself.

*Levin Gale* for the appellee:

1st. The plaintiff below expressly disavowed any intention to use the evidence objected to in the first exception, for the purpose of varying the contract contained in the bond, but claimed that it was admissible, among other things, for the purpose of doing away with the inference of fraud, which the defendant contended should be drawn from the fact that the judgment in the attachment suit was obtained by default. For this purpose, the evidence was perfectly competent as well as in general explanation of the circumstances of the case. The bond did not impose any obligation whatever upon Stephenson, and, so far as his obligations were concerned, it was competent to prove, by parol or other evidence, the nature, character, and extent of these obligations. 5 *G. & J.*, 157, *McCreary vs. McCreary*. 4 *Wash. C. C. Rep.*, 290, *McColloch vs. Girard*. 8 *Richardson*, 35, *Knight vs. Knotts*. 7 *G. & J.*, 331, *Dorsey vs. Eagle.*

2nd. The granting of the first three prayers, and the instruction given by the court, gave to the defendant all the law to which he was entitled. The court's instruction, particularly, fully and fairly submitted to the jury all the questions proper for them to consider. The fourth prayer was obnoxious to the objection of separating a limited portion of the evidence, and submitting that to the jury as the basis on which to find fraud, and was calculated to mislead and embarrass the jury, and the qualification added tended to relieve the case from that embarrassment. 10 *Md. Rep.*, 67, *Wilson vs. Smith*. 13 *Md. Rep.*, 348, *Chew vs. Beall*. The *fifth* prayer was properly rejected because the judgment obtained against Stephenson, in the attachment suit, was a sufficient legal requirement upon him to pay, and it was unnecessary, and would have been improper, for him to wait for an execution, which would have only added costs. 1 *G. & J.*, 497, *Mayor & C. C. of Balto. vs. Hughes.*

LE GRAND, C. J., delivered the opinion of this court.

This action was brought by the appellee against the appellant on a bond, given by the appellant, for the indemnification of the appellee, under the following circumstances: Stephenson (the plaintiff below) purchased land from Creamer (the defendant). A person, of the name of Tome, having obtained judgment against a person, named Adams, from whom Creamer had previously purchased this land, an attachment, on the judgment recovered by Tome against Adams, was issued and laid in the hands of Stephenson, and also on the lands. The design of the attachment was, to affect any interest which Adams might have in the lands, or the proceeds. Stephenson and Creamer being anxious to complete the purchase, it was agreed between them that Stephenson should pay the purchase money and take a title, upon Creamer giving a bond to indemnify him against these attachments and certain other claims.

The bond of indemnity is dated the 3rd day of December 1853. After reciting certain facts and agreements, it proceeds to declare that Creamer is to "indemnify and save harmless the said Stephenson against all and singular the claims aforesaid, and against all costs and reasonable charges to which he may be subjected in resisting said claims, and shall refund to said Stephenson all such sums of money as he, the said Stephenson, may be legally required to pay on account of said claims, or upon other liens upon the land aforesaid, or the purchase money therefor, which may have originated since the date of the said Adam's purchase thereof, from," &c., &c.

The plaintiff, to sustain his case, gave in evidence the bond of the defendant, the judgment in the attachment suit and proof of the payment of the amount by Stephenson; and then offered in evidence a statement of H. W. Archer, Esq. To the admissibility of the following portion of it the defendant excepted, viz: "At the same time Creamer, (the time when the bond was delivered to Archer for Stephenson,) inquired what amount he might be held liable for upon such bond, in regard to the same attachment, and was told by me, that, if Tome obtained judgment, he would have to pay the amount

that Stephenson might be compelled to pay, including his costs and expenses, as provided in the bond, but that if the attachment was defeated, he would only have to pay Stephenson's expenses, which would probably be nothing more than the fees which Stephenson might have to pay his attorney; Creamer objected to Stephenson's employing counsel at his expense, and *I recollect distinctly that it was understood that Creamer would have the case defended by his own counsel, which appeared to me very proper, as he alone was interested in the result;* and, as I was counsel for Tome, it would have been impossible for me to have appeared or acted, for either Stephenson or Creamer, in the attachment case."

The objection of the defendant was placed upon the ground, that, by the introduction of the testimony, "it was sought thereby to prove a parol understanding, wholly different and inconsistent with the legal purport of the bond offered in evidence, and that the bond itself must constitute the only evidence of what the contract was between the parties, and that its legal effect could not be varied by any parol agreement or explanation which might be supposed to accompany and explain it." The plaintiff *expressly disclaimed any such purpose* in the offer, and declared that the evidence was offered *to show that the plaintiff had acted in good faith in reference to the said attachment suit, and to rebut any presumption of fraud that might be contended for, as arising out of the judgment in the attachment suit having been obtained by default,* and, generally, for any other purpose in the cause which *"did not vary the purport of the bond."* The court overruled the objection of the defendant, and allowed the evidence to go to the jury with the qualification, *"that the same should not be allowed to qualify or vary the legal purport or effect of the bond."*

There can be no doubt that is not admissible to vary or contradict a written agreement by parol; but no such effort was made in this case; so far from it, such was expressly prohibited by the court and disclaimed in the offer. And although the law interdicts such variance or contradiction, it admits of the introduction of parol evidence in the case of a la-

tent ambiguity, *(McColloch vs. Girard,* 4 *Wash. C. C.,* 290,) or to prove any collateral, independent fact, about which the agreement is silent. The case of *McCreary vs. McCreary,* 5 *Gill & Johnson,* 147, fully sustains the ruling of the Superior court on this exception. That was an action of debt to recover the amount of a single bill, and the plaintiff pleaded, by way of set-off, a claim for various articles sold and delivered, and upon the trial, proved a lease of land by him to the plaintiff, in which the plaintiff covenanted to pay the defendant a certain annual sum for life, and to pay all claims and demands existing against the defendant at the date of the lease. The defendant also proved an appraisement, made at the request of the parties, of various articles of personal property, (which the appraisers certified the plaintiff was to take as his property at the valuation,) that such articles were delivered to the plaintiff at the valuation, and that the lease, appraisement and delivery were made at the same time. The plaintiff then proposed to prove a verbal agreement between him and defendant, that the value of this property should be applied by the plaintiff to the payment of the outstanding debts of the defendant. The county court rejected the evidence, but the Court of Appeals reversed the decision, and held, that as the appraisers' certificate did not show in what manner the property valued was to be paid for, parol evidence was admissible to ascertain the fact; adopting the rule as stated in Philips' evidence, that "though an ambiguity apparent on the face of a written instrument cannot be explained by extrinsic evidence, yet, where a question arises, as to the general intention of the parties, concerning which the instrument is not decisive, it has been held that proof of independent facts, collateral to the instrument, may be properly admitted." And in *Dorsey vs. Eagle,* 7 *Gill & Johnson,* 331, it is said: "It is a well settled principle of law, that parol evidence may be given of collateral and independent facts, which tend to support a deed, provided it is not offered to vary the agreement, and is consistent with the deed."

Now the language of the contract in this case is wholly

Creamer *vs.* Stephenson.

silent as to the *manner* or *means* to be employed *"in resisting"* the claims referred to. There is nothing inconsistent with, or contradictory to this language, in the proof of the independent fact as to how and through whose agency the resistance was to be made. We think the court was not in error.

The second exception of the defendant is abandoned. The third exception relates to the prayers offered on behalf of the defendant. Of the five instructions asked, the first three were granted, the fourth and fifth, as presented, were rejected, but the fourth, with a qualification, was granted. The second exception having been abandoned, the only point of the fourth prayer is, that from the facts enunciated in it the jury might find, that the payment made by the plaintiff was not in good faith, but in collusion with Tome. The argument urged in support of this prayer rests on this idea: that the judgment ought not to have been paid until *after* execution, and that having been paid without execution, the defendant is in nowise responsible to refund the amount. To this reasoning we do not assent, nor does the law give it any support. It was the judgment which fixed the liability. Had Stephenson withheld payment until execution was levied, Creamer very reasonably might have complained of such unnecessary accumulation of costs. If there was no other reason to ratify the rejection of the defendant's fifth prayer, the abandonment of his second exception in this court would be sufficient. The prayer, among other things, leaves it to the jury to find that Adams was not a creditor of either Stephenson or Creamer. The judgment in the attachment suit established the indebtedness of Stephenson, as garnishee, and precluded all further question in regard to the matter.

We do not perceive any valid objection to the instruction given by the court. It fairly submitted the *bona fides* of the conduct of the plaintiff to the jury, omitting no fact important to the inquiry.

*Judgment affirmed.*

(Decided March 21st, 1860.