WINES & KIMBALL, *Respondents, v.* STEVENS & SHURTLIFF, *Appellants.*

ANSWER DOES NOT WAIVE ACTION ON DEMURRER.—A demurrer being overruled and exception taken, the exception is not waived under the Practice Act, by answering over.

AMENDMENTS TO STATEMENT.—Where proposed amendments to a statement on motion for a new trial are duly filed, as required by the 195th Section of the Practice Act, the Record must, also, show that the Attorney of the moving party has been served with the amendments, or the moving party will not be precluded by the limit prescribed by said Section, from objecting to said amendments.

ID.—It is error to allow an entire statement prepared as a substitute for the proposed statement of the moving party, under the pretense of amendment. Levey *v.* Fargo, 1 Nev. 421.

39

ERROR, HOW WAIVED.—Where a party applies to the appellate Court for leave to correct the settled statement on appeal, he precludes himself from urging the error that a substituted statement was allowed by the Court.

WRITTEN CONTRACT, RULE OF EVIDENCE —The rule that where a written contract expresses the entire agreement, and there is in it no latent ambiguity, then it is the sole expositor of the intention of the parties, and, in the absence of fraud, parol evidence cannot be received to "contradict, add to, or vary its terms," is subject to exception.

PAROL EVIDENCE, EXPLAINING WRITTEN CONTRACT.—Evidence in furtherance of and necessary to the full and fair enforcement of a written contract, may be given.

ID.—Parol evidence is admissible to prove any collateral, independent fact or agreement, about which the writing is silent, in a case where the silence does not amount to an implication of a particular agreement.

ID.—Evidence offered not to contradict or vary the terms of a written agreement, but simply to explain how it is to be carried out, is admissible.

ID. APPLIED.—Where a written contract for the sale and delivery of cattle provides that they shall be selected by the vendees from certain bands, on certain ranges, but is silent as to which party shall collect the cattle for selection, parol evidence that the vendors were to so collect the cattle is admissible.

OBJECTION TO EVIDENCE.—Where evidence is *prima facie* relevant and competent, it should be admitted over a general objection. In such case the objection should be specific, showing that the evidence should be excluded ; otherwise it should go to the jury for what it is worth.

APPEAL from the Third District Court.

The facts are stated in the opinion of the Court.

*Geo. E. Whitney,* for Appellants.

*J. C. Hemingray,* for Respondents.

WHITE, C. J., delivered the opinion of the Court :

This is an appeal from a final judgment in the District Court of the Third Judicial District, and from an order of said District Court overruling a motion for a new trial, and also from an order of the Judge of said Court denying the Defendant's motion to disregard Plaintiffs amendments to Defendants statement of the case on motion for new trial.

Upon motion of Appellants to this Court, at the January Term, 1875, the engrossed statement of the case as made in the Court below, was by order of this Court amended, so as to allow certain exceptions which are con-

tained in the Bill of Exceptions of the Defendants in the Court below, taken by Defendants and signed by the Judge, upon the motion of the Defendants to settle the statement, upon proposed motion by the Defendants for a new trial.

These amendments, as allowed by this Court, relate to the exclusion of testimony by the District Court, and will be hereafter referred to, so far as is necessary in the determination of the questions of law presented by such exceptions.

The action is upon a written contract for the purchase and sale of five hundred head of beef cattle, and one hundred calves, made on the 16th day of January, 1872, at Salt Lake City, to be performed between that date and the 1st of June, 1872. By the contract, Wines & Kimball (the Plaintiffs), agreed to sell and deliver to Stevens & Shurtliff, (the Defendants), five hundred head of beef cattle, and one hundred head of calves, to be selected by the Defendants from the bands of cattle of the Plaintiffs, at Tintic and Rush Valley, in the following manner :

"The Defendants were to select and designate at any time such number as they desired, fifty head or more at each selection, and upon such selection the Plaintiffs were to drive and deliver the same to the Defendants at their slaughter house near Salt Lake City, and upon the delivery of each band the Defendants were to pay, for each head of four year old or over, forty-five dollars ; for each head of three year old and under four, thirty-seven dollars and 50-100, and Defendants were to have the privilege of selecting cows of any age at the same rates as three year olds. For two year olds thirty dollars, and for calves twenty dollars." * * *

"And it is mutually agreed and understood between the parties, that whenever the said parties of the second part (the Defendants) shall desire the delivery of any portion of said cattle as hereinbefore mentioned, that they shall select, or cause to be selected, and designated to the said parties of the first part (Plaintiffs), or their agents, such cattle and calves as they may desire ; and

that the said parties of the first part, upon such selection and designation, shall immediately drive and deliver the same," &c.     *     *     *     "Provided that not less than fifty head shall be selected at each selection, and that the whole number is to be selected and delivered before the 1st day of June next.    And it is further agreed that the said parties of the second part shall have the privelege of selecting said cattle and calves, or any portion thereof, from either the band at Tintic or Rush Valley, as they may desire."

The first error assigned is, that the Court overruled Defendants demurrer to the complaint.    It is insisted by the Counsel for the Respondents that the Appellants, by further answering after the demurrer to the complaint was overruled by the District Court, waived the error, if any; that if they wished to bring the ruling of that Court to this Court for revision, they should have allowed judgment final to go against them upon the demurrer, and that after the pleading upon the demurrer was overruled, they cannot assign the ruling of the Court on the demurrer as error.

This is a rule which formerly appertained in a system of pleading different from ours, but which could not well prevail under a system which allows a Defendant to demur and answer to a complaint both at the same time. Pr. Act, p. 24 §42.

The assignment of error must be considered, but the demurrer was properly overruled.    The complaint sets forth a good cause of action, with proper recitals which are sufficient to put the Defendant upon his answer in bar, or in avoidance, and unanswered would constitute a legal foundation for a judgment.

Section 195 of our Practice Act provides, that "the party intending to move for a new trial shall give notice of the same, when the action has been tried by a jury within five days after the rendition of the verdict."     *     *     *     The notice shall designate generally the grounds upon which the motion will be made.    Within five days after such notice the party shall prepare and file with the

Clerk the affidavit or statement required by Section 194. The party preparing the statement shall number the pages and lines thereof, and after having filed it with the Clerk and had such filing entered and endorsed, shall serve the same on the adverse party on the same day, who may propose amendments thereto, referring to the line and page, and shall within five days after the service on him of the statement, file his amendments with the Clerk, and after having such filing entered and endorsed, shall on the same day serve the same with the statement upon the moving party, who shall within five days thereafter give written notice to the adverse party, if he declines admitting the amendments, or they shall be deemed accepted.

By this section the privilege and the burthen of preparing the statement devolves on the party moving for a new trial, and the manner of preparing it in numbering the pages and lines of the statement, taken in connection with the subsequent provision that the adverse party may propose amendments thereto, referring to the page and line of the statement, indicate the manner in which the amendments are to be made.

In most cases the adoption of the mode pointed out by the Statute would be sufficient to secure a fair statement; but it might occur, as in this case, that the Counsel for the opposing parties differed so widely as to what took place at the trial, that the amendments, so-called, of the party opposing the motion for a new trial were not amendments to the statement filed, but were a proposed substitute for the entire statement. That this, if allowed, would reverse the order of procedure, and might reasonably subject the party moving for a new trial to disadvantage, is obvious. But it is insisted that in such case the Defendants, if they objected, should have given written notice within five days after the service of the amendment of the Plaintiffs upon them, that they declined admitting the amendments, and that on their failure to do so, "that they (the amendments) are to be deemed accepted." The proposed amendments were endorsed and

filed April 21st, 1873, but it does not appear when, if ever, they were served on the Defendants, or their Attorney, and in the absence of this notice Defendants would not be precluded under this provision of the Act.

On the 28th of April a notice of a motion to strike out the proposed substituted statement, was filed by the Defendants' Attorney, and was served on the same day upon the Attorneys of Plaintiffs ; and on the same day Plaintiffs' Attorneys gave notice to the Attorneys of Defendants, that on the 1st day of May they would move the Court to settle the statement, &c. ; and that Plaintiffs' amendments to Defendants' statement be adopted and certified as the statement in the action.

The Plaintiffs notice specified the 3d day of May as the day when they would make their motion.     By a Bill of Exceptions of the presiding Judge, made in February, 1874, it is certified that these motions were heard before him on the     day of May, 1873, at the same time, and Plaintiffs' motion was denied and Defendants' motion was granted.

This action of the Court we regard as irregular, and so far as it adopted the substituted statement proposed as amendments by Plaintiffs as the absolute settlement of the statement, erroneous.     Upon the case as presented by the statement, and motion of the respective parties, the Court should have settled the engrossed statement after giving to the statements of both parties the examination and consideration to which each was entitled.     The object of the rules in the Practice Act upon this subject, is to provide that the parties themselves shall agree upon the statement on the motion for a new trial, and if they do not agree that each party shall have the opportunity of presenting the view of the matters of difference to the Judge, and thereupon that the Judge shall settle the statements guided by his own recollection of what occurred on the trial of the cause, with the aid of the written suggestions of the Counsel of the opposite parties.

The provision in the Practice Act that upon the failure of the party proposing a motion for a new trial, to

object to the amendments filed by the other party, that "they should be deemed accepted," is based upon the assumption that such amendments are not objectionable, and never contemplated its application to a case in which the amendments were not only objectionable, but so much so, that the opposing party moved to strike them from the file, because they were so obnoxious in form and substance as not to be permitted under the rule allowing amendments.

We wish not to be understood as determining that the party against whom a motion is proposed to be made for a new trial, is to be precluded by the statement made out by the moving party, or that he is bound in every case in proposing amendments to such statement by the mode indicated in the Practice Act. But we decide that when such party, instead of amending the statement as proposed by the adverse party, under the pretense of amendment, substitutes a statement of his own, that it is not proper for the Court to adopt such substitute as the engrossed statement on the motion for a new trial.

This is such an error as should reverse, but the Appellants have pursued and obtained another remedy by their application to this Court to correct the settled statement on appeal, and have thus precluded themselves from urging this error as matter of reversal.

What we have ruled on this point and on the demurrer substantially disposes of the remaining assignments of error, except the sixth, and in this we will consider the engrossed statement on the motion for a new trial, as amended by the order of this Court at a former term.

From these it appears that the Defendant asked a witness the following : Was there any agreement as to who should collect the cattle together for the purpose of making the selection ? The question was objected to by Plaintiff's counsel as an attempt to add to or vary the written contract.

Defendant's counsel stated that he proposed to show that the Plaintiffs were to collect their cattle together

by their herders in order that Defendants could make their selection. The objection was sustained by the Court and the Defendant excepted.

When a written contract expresses the entire agreement, and there is in it no latent ambiguity, then it is the sole expositor of the intention of the parties, and in the absence of fraud, parol evidence cannot be received to contradict, add to, or vary its terms. This rule is based upon the certainty of written evidence and the uncertainty of parol testimony. It was the Common Law before the Statute of frauds, and has received the sanction of all English and American Courts. The wisdom and propriety of the rule are so cogent that it has been enforced by the Courts with a rigid constancy, but it is nevertheless subject to exceptions, which in the endless variety of human transactions are ever multiplying, and which illustrate the capacity of the law for adapting itself to the end for which all law is ordained, the establishment of rules by which men and communities are governed in consonance with reason and justice. We do not propose an enumeration of the exceptions to this rule, nor will we attempt to classify them, if indeed they are not, as occurs to us, in their very nature, incapable of classification, but we will refer to such recognized exceptions as may serve as guides in the decision of the case under consideration.

Contracts are to be construed in the light of surrounding circumstances; from these alone are they tangible to sense and made susceptible of application and improvement. The law which imparts to it validity, and which constitutes a part of every contract with the nature of the subject matter, which is usually designated by mere words of discription, are to be considered in determining the situation of the parties, and in carrying out the contract. These are external, and imply, when not otherwise understood, the necessity of resorting to outside proof to render the contract intelligible and make it effectual. The introduction of such evidence is no violation of the rule we have stated, and no impeachment of

the written contract, but is in furtherance of and necessary to its fair and full enforcement.

Parol evidence is admissable to prove any collateral, independent fact or agreement about which the writing is silent, in a case where the silence does not amount to an implication of a particular agreement.    Cramer *v.* Stephenson, 15 Md. 211.

Evidence offered not to contradict or vary the terms of a written agreement, but simply to explain how it is to be carried out, is admissable.    Willis *v.* Fernald, 33 N. J. L. (4 Vo.) 206.

In Jeffrey *v.* Walton, 1 Starke R. 269, in an action brought for not taking proper care of a horse hired by the Plaintiff to the Defendant, the written contract was " Six weeks at two guineas," Lord Ellenborough said the written agreement merely regulates the time of hiring and the rate of payment, and I shall not allow any evidence to be given in contradiction of these terms, but I am of opinion that it is competent for the Plaintiff to give in evidence supplementary matter as part of the agreement.

Many other decisions might be cited illustrating exceptions to the general rule which we have above quoted, but we do not deem it necessary upon a subject so familiar to the profession.

These we have given because as we conceive pertinent and applicable to the form in which the question arises in this case.

The written contract offered in evidence by the Plaintiff was deliberate and well considered in its execution, by parties who were familiar with and understood the subject matter, and doubtless was intended to, and did express the terms and the substance of the contract, but upon a careful inspection of it when viewed in the light of its surroundings, it will be seen that it omitted an important item in the execution of the contract.    The beef cattle which Plaintiffs agreed to sell to Defendants were not identified by the contract farther than that they were to be taken from the bands of Plaintiff's cattle in

40

Tintic and Rush valleys. The cattle which Defendants were to have, were to be separated from these bands and identified before they could become the cattle to be delivered by Plaintiff, or purchased by Defendant's under this contract, and the first thing specified in the written contract to be done towards its execution was the selection by the Defendants of beef cattle out of these bands of cattle of the Plaintiffs in Tintic and Rush valleys. By the contract the Defendants had the right to select out of all the cattle in these bands. They could not make such selection unless the cattle were together in some place or places where they could view them and point out to the Plaintiff's which they selected. Had the cattle been scattered they could not have made the selection, and the gathering them together while it would have been practicable and easy for the Plaintiffs would have been difficult, if not impracticable, for the Defendants. With regard to this preliminary and important act, the contract is silent. By no fair intendment can it be inferred from the contract who of the contracting parties was to gather the cattle together that Defendants might select such as they would take under the contract. The Defendants offered to show by parol proof that there was an agreement between the parties " that the Plaintiffs were to collect the cattle together on the ranges, by their herders, in order that the Defendants might make their selection." This evidence does not contradict or vary, nor does it in a strict sense, add to the written contract. It relates only to the manner in which the contract was to be executed and is in furtherance and affirmation of it. We hold that the evidence was competent, and should have been received, and that the District Court erred in sustaining the objection to it and ruling it out.

The Defendants also offered to prove on the trial in the District Court by certain witnesses, who were shown to be butchers in Salt Lake City, and familiar with the subject, that the market value of beef cattle in Salt Lake City increased from seven cents per pound in the

middle of January, 1872, to twelve cents per pound in April and May, 1872.    The evidence was objected to by the Plaintiffs, and the Court sustained the objection, ruled out the evidence and the Defendants excepted. The objection was general, and if in any point of view the evidence was legal the objection should have been overruled.    The Plaintiffs sued for damages for a breach of contract in not receiving and paying for the cattle agreed to be purchased by Defendants.    The cattle were to be delivered at the slaughter house of Defendants near Salt Lake City, and that was the market in which the beef was to be sold.    Whether beef was higher or lower in that market during the period of proposed fulfilment of the contract than the price stipulated to be paid by the Defendants might be a material fact in ascertaining the damages and the amount Defendants would be liable to pay for the alleged nonperformance of the contract.

*Prima facie* the evidence was both relevant and competent, and in the absence of some specific objection, showing that it ought to have been excluded, it should have been allowed to go to the jury for what it was worth, and the Court below erred in sustaining the objection to and excluding it.

For the errors we have stated let the judgment of the District Court be reversed, annuled, and the cause be remanded for new trial.

BOREMAN, J., concurs in the conclusion reached.