(Decided 21st January, 1881.)

EBEN B. HUNTING *vs.* ADOLPHUS D. EMMART, trading as EMMART & QUARTLEY.

*Evidence not Admissible to Change the Meaning of the Acceptance of a Draft, as apparent on its Face.*

On the 25th July, 1877, L. & C. drew on H. : "you will please pay to E. & Q. $2583, to be taken from amount of purchase money of the house purchased by you, when they have entirely completed their contract dated June 18th, 1877." Across the face H. on the 26th July, wrote : "Accepted; payable when due under the contract, out of the purchase money." At the same time E. & Q. receipted as follows: "Received of H. his acceptance of L. & C's order of $2583, payable when due under the contract out of the purchase money of $4500." On the 16th February, 1878, L. & C. endorsed on the draft : "The contract of E. & Q. dated June 18th, 1877, for painting, glass and glazing of nine houses on North Boundary avenue, is completed to our entire satisfaction, according to their specifications." The ac-

ceptor refused to pay the draft, and in the action against him, he offered evidence of a contract other than that referred to on the draft, between him and the drawers, and of which the payees had no knowledge. HELD:

That no such evidence was admissible; and that the acceptor was liable.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial the plaintiffs offered one prayer and the defendant offered two prayers: the substance of these prayers is stated in the opinion.

The Court (BROWN, J.,) granted the plaintiffs' prayer and refused the defendant's prayers; the defendant excepted, and the verdict and judgment being for the plaintiffs, the defendant appealed.

The cause was argued before BOWIE, GRASON, MILLER, ROBINSON and IRVING, J.

*L. M. Reynolds* and *Orville Horwitz,* for the appellant.

The Court below erred in not allowing the defendant to prove the existence of the contract of purchase of the house in question; by the very terms of the draft itself, the amount agreed to be paid was to be paid out of the purchase money of the house, when due under the contract, and it was, therefore, competent, in the first instance, to show whether anything was due under the contract.

The very moment the attention of the Court was drawn to the fact that another contract was in existence besides the contract between the plaintiffs and Locke & Conway, it created such a latent ambiguity as authorized the introduction of the proposed evidence. 2 *Parsons on Contracts,* 557.

The plaintiffs' prayer proceeds on the hypothesis that the acceptance, on its face, shows that the amount named

in it was payable absolutely by Hunting, the defendant, on the completion of the work by Emmart & Quartley, whether he owed a farthing to Locke & Conway, under his contract of purchase, or not. The defendant insists that this is not the true construction of the contract of acceptance. His prayers are framed in accordance with the theory that the acceptance, by its very terms, points to another and a different contract, and that it was incumbent on the plaintiffs to show that the purchase money for the house had become payable.

*J. W. Denny* and *S. T. Wallis,* for the appellees.

By the terms of the draft and acceptance, construed either with or without reference to the receipt produced by the appellant, the appellant became bound to pay the amount of the acceptance to the appellees, upon the completion of the contract of the latter with Locke & Conway, which is recited in the draft. This last named contract is designated, in words, in the draft, and no other contract is described or specified, in draft, acceptance or receipt. Anderson, the agent of the appellees, who presented the draft, received the acceptance, and gave the receipt on part of appellees, testified on cross-examination, in answer to the appellant's own question, that no other contract than that mentioned in the draft was alluded to by appellant in the transaction, and that he, Anderson, had no knowledge, at the time he gave the receipt, of the existence of any other contract, and never heard of any, until appellant, long after appellees had done their work, said, that "he also had a contract," and under color of that, repudiated his obligation to pay.

The appellees, as the proof shows, would not close their contract with Locke & Conway, until they had first made direct application to Hunting, to ascertain whether he would give the acceptance tendered by Locke & Conway, and Hunting had actually given it. They did their whole

work on the faith of that acceptance.  If Hunting intended the acceptance to be payable, not upon the completion, by appellees, of the contract named in the draft, but on the fulfillment of another and different contract between Locke & Conway and himself, to be performed by Locke & Conway, it was his plain duty, in common honesty, to say so to the appellees, and not, by a trick or contrivance of unexplained words, to induce the latter to expend their labor and materials upon a job, for which their payment was to depend, without their knowledge, upon a contingency altogether apart from their own faithful performance of their duty.  To construe the words, "the contract," inserted by appellant in the acceptance and receipt, as referring to some other unnamed contract, different from that which was designated in the draft and was in the contemplation of the payees, would be to assist the appellant in the commission of a plain fraud.  The fact that the money drawn for was to be paid "from amount of the purchase of the house purchased by you," (appellant) gave appellees no notice whatever of any dependence of their money upon the contingencies of any unfulfilled contract of purchase and sale.  On the contrary, the acceptance of the draft drawn was a distinct admission that the appellant had purchased a house from Locke & Conway, and owed them purchase money for it, out of which he agreed to pay the appellees, when their work should be completed.  He estopped himself from denying that he had purchase money enough to meet the draft, and from setting up anything to the contrary of its sufficiency to pay the draft.  His acceptance amounted to saying: "I have bought a house from Locke & Conway, and when your work is satisfactorily completed, I will pay you out of the purchase money as they request."

So much for the case, on the face of the papers, aided only by Anderson's evidence, (produced by appellant) that no contract but that of the appellees and Locke &

Conway was mentioned by appellant, or known to Anderson, when the draft was accepted and the receipt was given.

But the appellees, on cross-examination, gave other proof by Anderson. He was asked to explain the meaning of the words of his own receipt, viz., "when due, under the contract, out of the purchase money of $4500." He answered that he understood it to mean when he signed it, "that there was so much money due, by defendant, to Locke & Conway, out of which defendant was to pay the amount of the draft to plaintiffs, when due to plaintiffs, under their contract with Locke & Conway." "The word 'contract' in his receipt, referred, 'he added,' to the contract between plaintiffs and Locke & Conway."

In this state of the case, on the face of the papers and the extrinsic proof, what was the offer of the appellant? He tendered in evidence a building-mortgage between Michael Roche and himself, assigned by Roche to Locke & Conway, "as the contract referred to in his acceptance," and "proposed to follow it up with proof that nothing had at any time become due and payable to Locke & Conway thereunder." The appellees objected to the testimony and it was rejected.

It will be observed that appellant did not offer or propose to offer any proof to contradict the evidence already in, or, in any way to connect the papers which he offered, with the appellees, or the transaction to which the appellees were party. There was no proof tendered or proposed to be given, to show that the appellees knew of the existence of the building-mortgage, or of the terms of the purchase, out of the money payable for which, the draft was to be satisfied. Anderson had proved that the appellant, pending the work of the appellees, had promised to pay the draft when the work should be completed, and after the work had been entirely completed, again promised to pay it, asking only a little time. None of

this was sought to be impeached, and the introduction of the building-mortgage was not proposed to be followed up by any evidence denying it. There is no legal ground, upon which the testimony so offered could be admissible.

The case of the appellant is substantially this : "I got you to paint my houses under an acceptance, which seemed, and which you understood, to be a promise to pay you, when your own work should be completed. I did not mean that, however. I had a private contract with Locke & Conway, of which you knew nothing, and which I carefully concealed from you. Availing myself of your ignorance, I worded my acceptance and receipt so as to enable me to contend that your pay was to be dependent, not on the completion of your own contract, as you supposed, but on the fulfilment of that of Locke & Conway, of which you knew nothing, and of which I gave you no notice. Not only that, but while you were going on, in good faith, painting my houses, I quickened your work by promising to pay you when it was done, and by holding out to you the inducement that the sooner you finished, the sooner I would pay you. You accordingly finished the work to my entire satisfaction, and I then again promised to pay you. Having thus got the whole of your work and material for my benefit and advantage, under false pretences, I now propose to prove the existence of my contract with Locke & Conway, which I concealed from you, and to insist that I owe you nothing, because those gentlemen are in default under it."

It was in aid of this proposition of legal and moral ethics that the evidence rejected was sought to be introduced, and the prayers of the appellant were presented.

Bowie, J., delivered the opinion of the Court.

The question presented by this appeal is, the proper construction of the acceptance of a draft drawn by Messrs. Locke & Conway, in favor of the appellees, on the appellant, and accepted by him.

At the trial below, the appellees (being the plaintiffs) produced and proved by competent evidence, the draft, and acceptance, and endorsement on the draft, of the tenor and effect following, viz.,

BALTIMORE, *July* 25*th,* 1877.

E. B. Hunting, will please pay to Emmart & Quartley, twenty-five hundred and eighty-three dollars, to be taken from amount of purchase money of the house purchased by you, when they have entirely completed their contract, dated June 18th, 1877.

$2583.00. LOCKE & CONWAY.

Across the face of the foregoing draft is the following, to wit:

" Accepted: payable when due under the contract, out of the purchase money.

"Baltimore, July 26th, 1877. E. B. HUNTING."

Subsequently there was endorsed on the back of the foregoing draft the following, viz.,

"The contract of Emmart & Quartley, dated June 18th, 1877, for painting, glass and glazing of nine houses on North Boundary avenue, is completed to our entire satisfaction, according to their specifications.

"Baltimore, February 16th, 1878. LOCKE & CONWAY."

The execution of which was also proved.

The appellees further proved by competent evidence, the original contract, between the drawers and payees of the draft, dated the 18th June, 1877, for painting and glazing nine marble front houses on Boundary avenue, and the completion of the work as therein stipulated, and that before the contract was entered into, the drawers of the draft had offered to secure the drawees, by a draft on the appellant; who, was waited on by the foreman of the appellees, to know whether he would accept it, and did

accept it in the form aforesaid, and delivered it to the foreman, who delivered it to the appellees.

That during the prosecution of the work, the appellant, being requested to make some advances on his acceptance, refused, but said he would pay when the work was done, that he urged the appellees to complete the work, the sooner it was done, the sooner they would get their money; that after the work was completed and certified by Locke & Conway, as aforesaid on the draft, the appellant promised to pay the draft after a short time, etc., and finally he refused, saying he had a contract with Locke & Conway, and he owed nothing under the contract.

On cross-examination, the witness admitted having given the following receipt:

BALTIMORE, *July* 26, 1877.

Received of E. B. Hunting his acceptance of Locke & Conway's order of $2583, payable when due under the contract, out of the purchase money of $4500.

EMMART & QUARTLEY,
*per Anderson.*

Witness said, that when the defendant drew this receipt, and handed it to him for his signature, he told defendant, it was unusual and unnecessary to give a receipt for the acceptance of a draft; defendant replied it was necessary to show that he had made himself responsible for the amount of the draft; witness then signed the receipt, and the defendant handed him the draft with the acceptance thereon. Being further cross-examined as to his statement in chief, that he had never heard from defendant of any contract, but that of the plaintiffs with Locke & Conway, until defendant, after the work was finished, finally refused to pay the draft, as he had testified in chief, and being asked in that connection what he understood by the words of his own receipt, "when

due under the contract, out of the purchase money of $4500," he said, that as he understood it when he signed it, there was so much money due by defendant to Locke & Conway, out of which defendant was to pay the amount of the draft to plaintiffs under their contract with Locke & Conway; no other contract than that between Locke & Conway and plaintiffs, was alluded to by the defendant at that time, or known to witness, etc.

The appellant, then offered in evidence certain papers, following:

1st. A mortgage dated the 19th of February, 1877, from Michael Roche to E. B. Hunting, reciting a lease from Hunting and wife to Roche of certain lots of ground, and that Roche covenanted to build certain houses thereon, and Hunting agreed to advance Roche $12,000 in money and building materials; to constitute a lien on the houses, in satisfaction of part of which on the compliance with the covenants of the mortgagor in all respects, so as to exempt from liability under the mechanics' lien laws of Maryland, the mortgagee, Hunting, agreed to purchase one of the houses, at the price of $7500, $3000 whereof to be credited on the mortgage, and pay the balance of $4500 in cash. The appellant in his brief says: "It further appears, that the said Roche assigned *his contract of leasing* to Locke & Conway, and that they proceeded to build the houses in question."

The defendant's counsel stated, that he offered these papers, on the part of the defendant, "*as the contract referred to in his acceptance aforesaid,*" and proposed to follow it with proof, that nothing had at any time become due and payable to Locke & Conway thereunder; but the plaintiffs objected, and urged that the defendant should not be allowed to read the papers to the jury, and to follow it up with the evidence proposed, which objection the Court sustained; to which ruling the defendant excepted, which constitutes his first bill of exceptions.

The testimony having been closed, the plaintiffs submitted one prayer, which was granted, and the defendant two, which were refused, to which ruling of the Court, the defendant also excepted, making his second bill of exceptions. The exclusion of the testimony, and the granting and refusal of the prayers, present substantially the same questions, and will be considered together.

The theory of the plaintiffs is, that by the true construction of the order and acceptance offered in evidence, the plaintiffs were entitled to receive the amount therein set forth, upon the entire fulfilment of their contract of June 18th, 1877, with Locke & Conway.

The defendant's contention is, that the plaintiffs are not entitled to recover, unless they have satisfied the Court and jury by proper and competent evidence, that the defendant was bound (under his contract of purchase of the house named in said draft to have been purchased by him) to pay the purchase money of $4500, at the date of the institution of the suit.

The plaintiffs' proposition is, that the acceptance on its face, shows that the amount named in the draft was payable unconditionally by the acceptor, on the completion of the work by Emmart & Quartley, under their contract dated June 18th, 1877.

It is the province and duty of the Court to construe all contracts offered in evidence, without the aid of extrinsic evidence, unless there is in their terms some ambiguity creating doubt as to their meaning, or unless the words were used in some technical or peculiar sense.

This is not an attempt to alter or change a written contract by parol evidence directly, but to change the meaning of the acceptance of the draft, by introducing evidence of other contracts between the acceptor and drawers of the draft, made long before, and of which the payees had no knowledge. To apply the language of the draft to a subject-matter, not within the contemplation of the drawers

and payees, when the draft was drawn or accepted. The draft and acceptance written on the same paper, constitute the contract. The draft is clear, certain and definite in every particular, the sum to be paid, the funds, the payees and the time, viz., " *when they have entirely completed their contract dated June 18th, 1877.*" The acceptance in connection, and as responsive to the draft, is unequivocal and free from all doubt. In technical terms, the *aggregatio mentium* and *consensus ad idem* are both complete. Put in the form of question and answer, the transaction may be thus paraphrased. Q. Will you pay $2583 out of the purchase money of house bought of us, to Emmart & Quartley, when they have completed their contract of 18 June, 1877. Ans. I will.

Besides the acceptance, the defendant drew out on cross-examination of the plaintiffs' foreman, that when he got the acceptence of the defendant, he was required to give a receipt for the acceptance, " to show that the defendant, had made himself responsible to the plaintiffs for the amount of the draft." This receipt, executed at the same time with the acceptance, is couched in the same terms as respects the time of payment, as the acceptance, using the identical words " payable when due under the contract, out of the purchase money," adding " of $4500 " at the end.

There is nothing in any contemporaneous paper comparing the draft, acceptance and receipt, and considering them as constituting one transaction, to create a doubt, as to the meaning of the contract. There is no ambiguity, *patens* or *latens*.

But the defendant insists, the true construction of the acceptance is, that the draft was payable out of the purchase money when the money was due under the contract for the purchase of the house, under the contract between the acceptor and Locke & Conway.

And to show that there is nothing due from himself to Messrs. Locke & Conway, he offered in evidence the mortgage and other papers referred to in the record. There

was no privity of contract between the plaintiffs and the defendant, in relation to the mortgage; or between the plaintiffs and Locke & Conway. The contract between the defendant and Locke & Conway, was entirely extra-neous and independent, and after the repeated verbal as-surances of the defendant, that he would pay the draft, when the painting and glazing were done by the plaintiffs, it would have been the grossest injustice, to allow him to make equivocal, certain terms, under pretext that they were susceptible of a double sense, and to introduce evidence of an entirely distinct contract of which the plaintiffs had no knowledge.

This would not be to explain a latent ambiguity, by evidence of collateral matter, but to create one, and substitute one subject for another.

It is impossible without violence to all rules of construction, to ignore the time of payment, and the identity of the contract, contained in the last words of the draft, viz., "when they have entirely completed their contract, dated June 18, 1877."

The general rules as to the admission of parol evidence to explain latent ambiguities, are too familiar to require citation. Some difficulty occasionally arises in their application, but the doctrine is well established, that as a general rule, written instruments are to be construed by the Court alone, according to the meaning of the language therein employed, without the aid of parol proof to explain the meaning and intention of the parties, unless, the terms of the instrument are technical or equivocal on its face, or are made so by reference to extraneous circum-stances. *Williams vs. Woods, Bridges & Co.,* 16 *Md.,* 220; *Creamer vs. Stephenson,* 15 *Md.,* 211; *Warner vs. Milten-berger,* 21 *Md.,* 264.

Finding no error in the rulings of the Court below the judgment will be affirmed.

*Judgment affirmed.*

(Decided 21st January, 1881.)