Boyce *vs.* Wilson.

*Order reversed.*

(Decided 17th February, 1870.)

[Upon a re-argument of the foregoing case, the Court modified its opinion by omitting therefrom so much as referred to the cases of *Tongue vs. Morton*, 6 *H. & J.*, 22, and *Frazer vs. Palmer*, 2 *H. & G.*, 471. There was, however, no modification of the order of the Court, which stands as originally passed.—REPORTER.]

---

## JAMES BOYCE *vs.* THOMAS WILSON.

*Parol Testimony to vary the Consideration in a Written Contract — Written Contracts Reformed only by a Court of Equity.*

B entered into a written agreement with W for the purchase of certain property. The consideration expressed was $90,322.00. This sum was paid in pursuance of the contract. B afterwards discovered that by a mistake in an arithmetical calculation, the consideration had been placed at a sum greater by $9,072.00 than the one agreed upon   An action at law to recover this sum was brought, the *narr.*, containing the common money counts, including the count for "money had and received by the defendant for the use of the plaintiff." HELD:

1st. That parol evidence was not admissible to vary the written contract by striking therefrom the consideration expressed in it, and inserting in its stead another reduced consideration.

2d. B. has made no mistake which a Court of Law can correct, if he has paid only that sum which his contract obliged him to pay. He cannot recover at law a sum paid by mistake, unless that sum were over and above what he had contracted to pay.

3d. Whatever may have been the mistake, or how produced, it can find no recognition until the written contract shall have been reformed and

made to conform to the intention of the parties, and this a Court of Law cannot effect. A Court of Equity alone can reform a written contract.

4th. The action for money had and received, is an equitable action, but, in it, a written contract cannot, by parol, be shown to be different from the import of its terms.

APPEAL from the Superior Court of Baltimore City.

This action was instituted to recover from the appellee the sum of $9,072 paid him by mistake. The mistake was alleged to have occurred as follows: A person by the name of Kerr owned an interest of one-fourth in certain property in Allegany county, known as the Hamill Mines, and also two small pieces of property distinguished as the "Reese" and "Sigler" parcels; he owned, likewise, one thousand, five hundred and fifty shares of the stock of a corporation called the Franklin Mines Company, also in Allegany county. The appellant, the plaintiff below, bought of Kerr this property, for the sum of $54,000. The appellee owned one-fourth of the said Hamill Mines, and two thousand eight hundred shares of the Franklin Mines stock. The appellant desired to buy the appellee's interest in the Hamill and Franklin Mines, and after some negotiation, it was agreed that he would sell to the appellant on the same terms as Kerr had sold. As Kerr owned, in addition to the Hamill and Franklin stock, the two small properties, "Reese" and "Sigler," above named, it was agreed that $4,000 should be considered as the price paid Kerr for them. This deduction reduced the one-fourth Hamill and one thousand five hundred and fifty shares of Franklin to $50,000; and then, as Wilson owned one-fourth Hamill, and two thousand eight hundred shares of Franklin, a calculation in rule of three was made by him as follows: 1550 : 2800 :: $50,000=$90,322. Boyce, thinking the calculation had been properly made, paid Wilson $90,322. The calculation proceeded on the idea that as Kerr and Wilson owned the same interest in the Hamill property, it was unnecessary to take any account of it, but simply to make the proportion in refer-

ence to the shares of stock in the Franklin Mines. . This action was instituted to recover the amount overpaid.

The *narr.* contained the usual money counts, including the count for "money had and received by the defendant for the use of the plaintiff."

The defendant pleaded the general issue. At the trial the plaintiff read to the jury the agreement in writing between him and the defendant, and the receipts attached thereto, showing the consideration in the agreement, and the payment by Boyce thereunder, of $90,322 for the property, and $1,680 for dividends on stock.

The plaintiff then proved by himself that the consideration named in the agreement and paid by him, was not the true consideration according to the actual contract between him and the defendant, and explained, as already stated, the mistake made and the mode in which it occurred.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY, BRENT, GRASON, MILLER and ROBINSON, J.

*Orville Horwitz,* for the appellant.

There is abundant evidence to establish the appellant's claim. *Wolfe vs. Hauver,* 1 *Gill,* 89; *Townsend vs. Croudy,* 98 *Eng. Com. Law,* 487, 489.

As to its admissibility if properly before the Court, see *Canal Bank vs. Bank of Albany,* 1 *How.,* (*N. Y.,*) 287; *Wheedon vs. Olds,* 20 *Wendell,* 174; *Waite vs. Leggett,* 8 *Cowen,* 195; *Goodspeed vs. Fuller,* 46 *Maine,* 141; *Grimes vs. Blake,* 16 *Inda.,* 160; *Wilkinson vs. Scott,* 17 *Miss.,* 250-256; 1 *Domat,* 501.

*Charles Marshall* and *Wm. A. Fisher,* for the appellee.

At law no evidence was admissible to contradict the sale or written agreement between the parties, and if there were any error in the written contract, it could only have been corrected by means of an appropriate application to a Court of

Equity, supported by such evidence as Courts of Equity require in those cases; and the appellant ought, in fact, to have been stopped at an earlier stage of the cause, under the objections to his testimony. *Howes vs. Barker*, 3 *Johns.*, 506; *Murphy vs. Barron*, 1 *H. & G.*, 258; 1 *Selw. N. P.*, 82; *Fitzhugh vs. Runyon*, 8 *Johns.*, 375; *Bradley vs. Anderson*, 5 *Vermont*, 152; *Morton vs. Chandler*, 7 *Greenleaf*, 44; *Lincoln vs. Avery*, 1 *Fairf.*, 418; *Coleman vs. Crumpler*, 2 *Devereux*, (*Law*,) 508; *Druiff vs. Lord Parker*, 5 *Law Rep.*, *Equity Cases*, 131; *Newcomer vs. Kline*, 11 *G. & J.*, 470; *Saunderson vs. Piper*, 5 *Bingh. N. C.*, 429; *Brown vs. Curtis*, 2 *N. Y.*, 227; *Brewster vs. Silence*, 8 *N. Y.*, 213; 2 *Phillip's Ev.*, 677; *Browne on Statute of Fraud*, secs. 387, 409 *and* 409 *a*.

But even if the Court should think it was allowable in this case to offer evidence of every kind, the appellant did not produce such as would have been sufficient, even upon a bill to reform the contract, and no less measure could be adopted at law.

The proof shows, that however the calculation was made, the minds of the parties met for the first time when the *sum had been fixed;* and, however erroneous may have been the principles upon which the calculation was made, if a sum were arrived at which one party stated himself to be willing to accept, and the other to pay, and the contract was drawn with reference to that sum as the consideration, and both parties were content with it, it would be a wrong to say that there was any *mistake in the contract.* We deny, therefore, that there has been any mistake shown, but even if there were the appellant has furnished no material by which any correction could be made. He must show precisely what the contract should be. *Wood vs. Patterson*, 4 *Md. Ch., Dec.*, 335; *Woolen vs. Hillen*, 9 *Md.*, 185; *National Fire Ins. Co., vs. Crane*, 16 *Md.*, 260; *Ellinger vs. Crowl*, 17 *Md.*, 361.

MAULSBY, J., delivered the opinion of the Court.

This action is to recover money paid by mistake under a count for money had and received. At the trial the plaintiff

offered two prayers which were rejected, and the Court granted the following prayer of the defendant: "That there is no sufficient evidence to shew such a mistake in the contract of April 15th, 1864, and the deed of Wilson to Boyce and Rieman, as will entitle the plaintiff to recover in this action," and the plaintiff appealed.

In the view which we take of the case, we do not deem it material to determine whether the defendant's prayer, in the terms used, was properly granted or not. The contract offered in evidence by the plaintiff is a written contract, in which the consideration expressed is ninety thousand, three hundred and twenty-two dollars, and that sum was paid by appellant to appellee. The ground of the appellant in this suit is that the consideration, which ought to have been expressed in the written contract was eighty-one thousand, two hundred and fifty dollars, and that he paid nine thousand and seventy-two dollars too much, by reason of the fact that the written contract did not contain the true contract between the parties to it.

He was permitted by the Court below to offer parol evidence, and to prove that the written contract was *intended* to embody a verbal agreement previously made. His counsel asked him, testifying as a witness, "what the agreement was which resulted in the written contract, and whether there was any mistake in the amount of consideration stated in the contract?" And again, whether the consideration stated in the written contract "was the true consideration for the property agreed to be conveyed," or whether there was any mistake, and if so, what it was, and how it arose? The witness replied, in substance, that he and the appellee had agreed by parol that he was to purchase from the appellee certain real estate, and mining stocks, at certain valuations, and that, after negotiating for some time, they finally made a calculation of the amount which he was to pay for the same, and that the sum ascertained by the calculation was ninety thousand, three hundred and twenty-two dollars, that afterwards, the agreement was reduced to writing, and embodied that sum as the consi-

deration, and that the contract offered in evidence was that writing, that when it was executed he was not aware that the said sum was not the correct consideration, but that sometime afterwards he discovered that the calculation had been made on an erroneous basis, and that the sum which ought to have been expressed in the written contract was eighty-one thousand, two hundred and fifty dollars, that before this discovery was made by him the real estate and stocks had been conveyed and transferred to him, and he had paid the full sum mentioned in the written contract. The alleged mistake was in the calculation made before the written contract, and was carried into that contract.

Can the parol evidence vary the written contract, by striking therefrom the consideration expressed in it, and inserting in its stead another reduced consideration? The plaintiff has made no mistake which a Court of Law can correct, if he has paid only that sum which his contract obliged him to pay. He cannot recover at law a sum paid by mistake, unless that sum were over and above what he had contracted to pay.

The question inevitably recurs, what was the valid contract, the precedent parol agreement, or the subsequent written contract? There can be but one answer.

The case of *Morton and Chandler*, 7 *Greenleaf*, 44, is directly to the point in this case. On page 46 the Court says: "Now, the plaintiff, in order to maintain the present action, attempts to prove, by parol evidence, that, by mistake, the sum secured by this instrument was too large. Can he do this? It is a well known rule of law that parol evidence is not admissible to vary the meaning of a deed, or to explain that which is apparent upon the face of it." And again, the Court says that the party "would not be permitted to introduce parol evidence to shew a mistake, and thus vary the effect of the sealed instrument;" that he could not accomplish indirectly that which he could not do directly; that he could not, in an action for money had and received, shew what he would be estopped from shewing in an action on the deed. That he might prove

fraud, and thereby avoid the legal effect of the instrument. And, in 5 *Vermont*, 152 : " Parol evidence is inadmissible to contradict, vary or explain a written contract, or to shew it different from what it purports to be on the face of it, for reasons assigned by LORD COKE," who says : " It would be inconvenient that matters in writing, made by advice and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by an averment of parties, to be proved by the uncertain testimony of slippery memory ; and it would be dangerous to purchasers and all others in such cases, if such crude averments against matter in writing should be admitted."

" Parol evidence is inadmissible for the purpose of altering the legal operation of an instrument, by evidence of an *intention* to that effect, which is not expressed in the instrument." " No parol evidence can be received to explain an agreement in which there is no latent ambiguity." The case from which these quotations are made is, in principle, identical with this case. It was an action on a promissory note, payable in cattle or grain, and parol evidence was offered that the contract agreed on, when the note was given, was, that it was to be made payable in carpenters' work or cattle or grain, at different dates from that expressed in the note, and it was insisted that a mistake had been made in writing the note by the plaintiff, who was admitted to have written it, or fraud practiced on the defendant in writing it different from the alleged contract. The Court said, if it were merely a mistake it could not be shewn by parol. " It is not suggested that the plaintiff intentionally wrote the note differently from the contract; nor that the defendant did not read the note, and understood its contents before he signed it ; therefore, if there was a difference between the note and contract, we are not to conclude that it was the effect of fraud, but of mistake, which could not be given in evidence to affect the plaintiff's right of recovery."

To multiply authorities upon the established rule that parol evidence cannot be allowed to contradict, vary or explain a

written contract would be scarcely excusable. The only question is its application to this case, and we cannot see how that can be avoided. The written contract may not have been in accordance with the intention of the parties. It may have expressed, by mistake, one consideration, when the real intention out of mind at the moment of its execution, was that it should have expressed another. But, whatever may have been the mistake, or how produced, it can find no recognition until the written contract shall have been reformed and made to conform to the intention of the parties, and this, a Court of Law, cannot effect. A Court of Equity alone can reform a written contract.

When the Court of Appeals, in *Murphy vs. Barron*, 1 *Harris & Gill*, 258, said, "the action for money had and received is an equitable action, and equally as remedial in its effects as a bill in equity," it did not mean to be understood as obliterating any of the well defined lines of demarcation which separate the jurisdiction of Courts of Law and Equity. It did not mean that an action of *assumpsit* can be founded on anything else than contract, express or implied. It meant only, that contracts to repay money received, through fraud or mistake, would be implied, in a spirit of liberal and generous justice, when the rigid rules of law did not forbid. The illustrations put in the Court's opinion, explain it. As, "where money has been paid on a consideration which has failed."

"That the extending those actions depends on the notion of fraud." "If a man takes another's money to do a thing, and refuses to do it, it is a fraud; and it is at the election of the party injured either to affirm the agreement by bringing an action for the non-performance of it, or to disaffirm the agreement *ab initio*, by reason of the fraud, and bring an action for money had and received to his use."

But the Court did not intend to say that, in this action, settled rules of law could be abrogated; that a written contract could be shewn, by parol, to be different from the import of its terms, or that the rules regulating the force and effect of evidence could be interfered with or altered.

The result from these views being that the plaintiff cannot recover in a Court of Law, it is not material to determine whether or not the prayer, as offered, was properly granted, because, even if it were erroneous, the appellant has sustained no injury. He could derive no benefit from a reversal, and to order a new trial would be nugatory, because he could not recover.

Under the views expressed, the plaintiff's prayers were properly rejected. Therefore, this Court will not reverse the judgment.

*Judgment affirmed.*

(Decided 15th February, 1870.) .