Mitchell and Wife *vs.* Wedderburn and Wife.

(Decided 16th December, 1887.)

Cecil Wallace Mitchell, and Lydia P. Mitchell *vs.* Alexander J. Wedderburn, and Jane Sarah Wedderburn.

*Pleading—Demurrer—Construction of Contract.*

Although a plea may be defective in matter of form, if it sets forth substantially a good ground of defence, a demurrer to it will be overruled.

M. a *féme covert*, sold to W. a *féme covert*, certain shares of stock in a Fertilizer Manufacturing Company. By the first clause of the con-

tract, which was in writing, signed and sealed by M. and W. and their husbands, the stock was to be paid for in fertilizers manufactured by said company. Another clause provided that upon payment of the whole purchase money, the stock was to be transferred to W. to be retired by the company; and that all the terms of the contract were to be subject to the rights of the creditors of the company, "and of no effect to alter the *status* of the parties hereto with respect to said creditors as regards the respective interest of said parties in the assets of the company." After a partial delivery under this contract, the directors of the company determined that further delivery of the fertilizer to M. could not be made without impairing the rights of the creditors of the company, and the contract was abandoned with the assent of all parties. In an action for breach of the contract brought by M. and her husband against W. and her husband, it was HELD:

1st. That under a proper construction of the contract, which was drawn in a bungling manner, and contained clauses inconsistent with each other, the stock was not sold to W. individually, but through her to the fertilizer company, and if it should turn out that the delivery of the fertilizer in payment of the purchase money interfered in any manner with the rights of the creditors, then it was to be void and of no effect.

2nd. That such being its construction, and the condition on which it was to become inoperative and void having happened, there was no ground on which W. could be held personally liable under it.

APPEAL from the Superior Court of Baltimore City.

This is an action for the breach of a written contract under seal, brought by the appellants, Cecil Wallace Mitchell and Lydia P. Mitchell, his wife, against the appellees, Alexander J. Wedderburn and Jane Sarah Wedderburn, his wife. The contract is signed and sealed by all the parties, the husbands uniting therein "in testimony of their assent to all the covenants contained (therein) on the part of their respective wives." The case is stated in the opinion of the Court. The verdict and judgment being for the defendants, the plaintiffs appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

Mitchell and Wife *vs.* Wedderburn and Wife.

*William Reynolds*, for the appellants.

The defendants' pleading is bad for duplicity, which still remains, under the Maryland system, as at common law, ground for demurrer. *McCauley, et al. vs. State*, 21 *Md.*, 571.

The first part of it, so far as its meaning is ascertainable, appears to set up the defence that the sealed agreement sued on contained a *proviso* that it should become void if at any time it appeared that the withdrawal of assets, &c., was diminishing or impairing substantially the security of the Ceres Company's creditors, and that this fact did become apparent—while the latter part of it alleges a voluntary mutual abandonment of the contract by both parties thereto. Either of these defences alone, if properly pleaded, might form the subject-matter of a good plea; but both incorporated in the same plea render it demurrable for duplicity, even though, as in this case, one or both of them may be badly pleaded. *Stephen on Pleading*, *259.

But independently of this fault, the plea is bad because the proviso or defeasance set up as the first ground of defence is not stated with sufficient directness and certainty. *Gladfelter vs. Walker*, 40 *Md.*, 10; *Harper vs. Hampton*, 1 *H. & J.*, 622, 675.

In all such cases where there is a want of certainty in the allegations of a pleading, the rule is that its averments must be taken in the sense most strongly against the pleader. *Maenner vs. Carroll*, 46 *Md.*, 194, 215.

If the sixth clause of the agreement is by its terms, absolutely repugnant to the preceding clauses, then it must be disregarded under the well-established rule, that when two conditions are repugnant, the first in deeds and contracts *inter vivos*, shall stand. *Budd vs. Brooke*, 3 *Gill*, 235; *Winter vs. Gorsuch*, 51 *Md.*, 184; 2 *Pars. Cont.*, *513, note.

If this Court be unable to determine what the said sixth clause does mean, then it should be disregarded altogether

as nonsensical. *Stockton vs. Turner*, 7 *J. J. Marshall*, 192; *Merrill vs. Bell*, 14 *Miss.*, (6 *Smedes & M.*,) 730.

But this sixth clause properly construed, is neither repugnant to the rest of the contract, nor absolutely nonsensical, but is simply irrelevant to the obligations assumed by the defendants, under the terms of the contract, and consequently cannot affect those obligations or the plaintiffs' right to enforce them in any respect whatsoever.

*John T. Mason, R.,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

This is an action to recover damages for the breach of a contract in writing, by the terms of which the plaintiff, Mrs. Mitchell, alleges she sold 260 shares of stock of the Ceres Manufacturing Company to the defendant, Mrs. Wedderburn, for the sum of $18,000.

The stock was to be paid for in *"The Ceres Super-phosphate,"* a fertilizer manufactured by the company, at a valuation of twenty-two dollars per ton, not more than four hundred tons to be delivered to Mrs. Mitchell in any one year.

The sixth clause provides, that upon the payment of the whole purchase money, the stock was to be "transferred to Mrs. Wedderburn to be retired by the Ceres Manufacturing Company in accordance with law," and further that "all the terms of this contract are hereby declared and intended to be subject to the rights of the creditors of the Ceres Manufacturing Company of Baltimore City, and of no effect to alter the *status* of the parties hereto with respect to said creditors as regards the respective interest of said parties in the assets of said company."

To this action, the defendants pleaded, that the contract sued on, as appears from the terms thereof, was part of a plan proposed between the plaintiff, Mrs. Mitchell, and the defendant, Mrs. Wedderburn, they being the holders

of the majority of the stock of the Ceres Manufacturing Company, by which Mrs. Mitchell was to sell her stock to the company through Mrs. Wedderburn, and when paid for, to be retired for the benefit of the remaining stockholders, all parties to the transaction believing at the time, that the stock could be paid for in fertilizers belonging to the company, without impairing the rights or interests of its creditors, but that the contract was made upon the express condition, as appears from its terms, that if it should turn out, that the delivery of the fertilizer in the payment of stock impaired in any manner the rights of the creditors of the company, then the contract was to be void and of no effect.

The plea further alleges, that after a partial delivery of the fertilizers under the contract, it became plain and apparent to all the parties thereto, that the further delivery could not be made in justice to the rights of creditors, and thereupon the contract was with the consent of the plaintiff abandoned.

To this plea the defendants filed a general demurrer, and as special demurrers for defects in matter of form are no longer allowed by the Code, the only question under the general demurrer is, whether this plea sets forth a substantial defence to the action ?   Now if we reject all unnecessary verbiage and all unnecessary matter as mere surplusage, the defence set up by the plea, is that the contract sued on is by its terms a sale of Mrs. Mitchell's stock to the Ceres Company, to be paid for in a fertilizer manufactured by the company, subject however to the express condition, that if the delivery of the fertilizer in payment of the stock should affect the rights and interests of its creditors, then the contract was to be void and of no effect, a condition which in fact did happen.   In short, that the contract became inoperative and void, because of the happening of a dependent condition.   So whatever objection there may be to the plea for defects in matter of

form, it does set forth substantially a good ground of defence, and this being so, the demurrer was properly overruled.

We come then to the construction of the contract itself, for upon this depends the right of the plaintiffs to maintain this action. And here we must admit there is some difficulty in finding out precisely what the parties meant, because the different clauses in the contract are utterly inconsistent with each other. The first part of the contract is in terms an out an out sale of the stock by Mrs. Mitchell to Mrs. Wedderburn, and yet this is inconsistent with the sixth and other clauses. The sixth provides, that upon the payment of the whole purchase money the stock was to be transferred to Mrs. Wedderburn, to be retired however for the benefit of the company. If the sale was in fact made to her, then the stock on the payment of the purchase money belonged to her, and we are at a loss to understand why it was to be retired for the benefit of the other stockholders. Then again it provides that "all the terms of this contract are hereby declared and intended to be subject to the rights of the creditors of the Ceres Manufacturing Company, and of no effect to alter the *status* of the parties," &c.

In other words, if it should happen that the payment of the purchase money in fertilizers belonging to the company impaired the rights of its creditors, then the contract was to be void. Now if the sale was made to Mrs. Wedderburn, how could the payment of the purchase money by her in a fertilizer manufactured by the Ceres Company affect injuriously the rights of its creditors? She would be obliged to buy the fertilizer, and instead of its fertilizer, the company would have the money as assets for its creditors.

The contract is drawn in a bungling manner, but, as we construe it, the stock was not sold to Mrs. Wedderburn individually, but through her to the Ceres Company,

to be paid for in the fertilizer of the company, and if it should turn out that the delivery of the fertilizer in payment of the purchase money, interfered in any manner with the rights of the creditors, then it was to be void and of no effect. And that it was so understood is plain from the subsequent acts and conduct of the parties. The contract was made September 1st, and from that time until the 4th November, more than a thousand dollars worth of fertilizer was delivered by the company under it. In the early part of November, however, the Board of Directors, of which Mr. Mitchell, the husband and agent of the plaintiff, was a member and its President, determined that the further delivery of fertilizer to Mrs. Mitchell, could not be made without impairing the rights of the creditors of the company, and thereupon, with the assent and acquiescence of all parties, the contract was abandoned. *Maryland Ins. Co. vs. Bossiere,* 9 *Gill & J.,* 155 ; *Abrams vs. Sheehan,* 40 *Md.,* 457 ; *Scarlett vs. Stein,* 40 *Md.,* 525 ; *Citizens Ins. Co. vs. Doll,* 35 *Md.,* 107 ; *Topliff vs. Topliff,* 122 *U. S.,* 121.

Such then being the construction of the contract, and the condition on which it was to become inoperative and void having happened, there was no ground at least on which Mrs. Wedderburn could be held personally liable under it.

*Judgment affirmed.*

(Decided 16th December, 1887.)