## A. D. BIRELY & SONS *vs.* WILLIAM M. DODSON, Trading as SOUTHERN FERTILIZER COMPANY, OF YORK, PENN.

*Admissibility of Evidence to Show that the Signed Contract was Not the Real Agreement of the Parties—Question for the Jury—Evidence of Usage not Admissible to Control Plain Meaning of Contract.*

A written contract, signed by the defendant, provided for his purchase of fertilizers at a certain price during the fall season of 1905, and also that he should order and pay for not less than one thousand tons on these terms during that season. Defendant ordered about six hundred tons which he paid for at the contract price, less a rebate to which he claimed to be entitled. In an action on the contract defendant offered evidence to show that neither he nor the plaintiff intended the written contract to be the real agreement between them, and that previous to its prepa-

ration they had agreed upon the price and terms, which provided for any quantity of fertilizer that defendant might need for that season, but that afterwards the plaintiff represented that he desired a written contract showing higher prices than those actually agreed on, as he did not wish the "trust" from which he purchased his fertilizer to know that he was selling below certain rates fixed by it, and also that he wished the written contract to provide for the purchase of one thousand tons in order to make his sales appear larger but that the defendants were not to be bound to order more than they needed.  *Held*, that this evidence was admissible, not to contradict the written contract, but to show that it never was the contract of the parties, and that it was for the jury to determine what their real agreement was.

A contract for the sale of goods contained the following clause,—"terms 5 per cent. discount on receipt of cash in December 1st from date of invoice." Elsewhere in the contract, the word "invoice" was used as meaning bill of lading. The buyer contended that the word "invoice" as used in the clause of the contract above-quoted was ambiguous and might refer either to a general statement of all shipments, or to the bills of lading accompanying each shipment, and offered to prove the existence of a custom in the trade according to which an itemized statement of all the dealings must be furnished before payment of the account could be demanded.  *Held*, that according to the language of the contract there is no doubt but that the word "invoice" in this clause meant bill of lading, and that consequently evidence of a usage in conflict with this language is not admissible.

*Decided January 7th, 1908.*

Appeal from the Circuit Court for Frederick County (MOTTER, J.)

The cause was argued before BOYD C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Frank L. Stoner* and *Hammond Urner*, for the appellant.

*Emory L. Coblentz* and *Charles C. Waters*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an action of assumpsit brought by the appellee to recover the price of goods sold and delivered to the appelants.  The plaintiff is a wholesale dealer in fertilizers doing

business in York, Pa., and the defendants are general merchants at Ladiesburg, Frederick County, Md., and for several years before this suit was brought, had been purchasing fertilizers from the plaintiff for their retail trade. The account sued on was as follows:

March 10th, 1905 to September 13th, 1905—To amount of
 account for fertilizers bought......... ............... ..............$7,253.71
December 22nd, 1905 by cash on account................................$6,343.50
                    ———
                    $910.21
Interest from December 1st, 1905 to September 22nd, 1906............. 68.62
                   ———
    Balance due................................................$978.83

The *nar* contained only the common counts, and the defendants by their pleas admitted they owed part of the claim, namely $265.84, which they then paid into Court, and denied the rest of the claim. This $265.84 represented the purchase price of a car load of fertilizers inadvertently overlooked when the payment of $6,343.50 was made, though the amount was tendered to the plaintiffs before this suit was brought, and was refused by them.

The plaintiff was the only witness in his own behalf. During his examination he was shown an itemized account of the whole transaction involved in this suit the correctness of which he testified to, and the defendants' counsel then and there admitted that each shipment on the bill was correct, and that each shipment had been duly delivered to them, but claimed they were entitled to a rebate of fifty cents per ton and a discount of five per cent upon the amount of purchase, representing the difference between the plaintiff's claim, and the amount admitted by the defendants to be due.

The plaintiff denied that the defendants were entitled either to any rebate or discount, and stood upon a written contract signed by both the parties, dated May 24th, 1905, which was put in evidence. The fertilizers for the spring trade were sold before the execution of this contract, but it appears that the only dispute is as to the fall goods sold under this contract, the allowance claimed by the defendants being as follows:

To rebate of 50c per ton on 566½ tons..........................................283.25
To 5 per cent. discount on $7,218.61.................... ......................360.93
To subscription of W. M. Dodson to church............................10.00

                                                                    ─────
                                                                    654.18

The contract in evidence provided that the plaintiff should furnish the defendants with their various brands of fertilizers at the prices and on the terms therein stated. The terms are as follows:

"Terms: 5 per cent discount on receipt of cash in Dec. 1st from date of invoice.

On goods ordered in 100 lb. bags, 50 cents per ton will be added to the above prices.

These prices are for car loads (15 tons.)

Above discounts are to dealers only, on fertilizers ordered during the fall season of 1905, and settled according to contract. Or, if time is wanted, the Southern Fertilizer Company will send note payable January 1st from date of invoice, and the dealer agrees to sign and return the same to the Southern Fertilizer Company."

The contract also contained the following provision: "The party of the second part agrees to order from the first party, receive and pay for, on the above terms, at least 1,000 tons of the various brands of fertilizers above noted during the fall season of 1905." It is not necessary to note any other provisions of this contract. It was signed by the parties at the City Hotel in Frederick, no one being present but the plaintiff, and A. D. Birely, senior member of the defendant firm.

The plaintiff testified that there was no other agreement or understanding between the parties than the written contract above. He acknowledged his promise to pay $10 to the church and his willingness to allow it as a credit, but denied that the defendants were entitled to any other credit, and said he did not allow the discount because defendants did not settle according to the contract. A. D. Birely testified that they only ordered 640 tons as they did not need more for their trade, and that the agreemennt under which they were purchased was reached at their office in Ladiesburg, but the paper was signed later at the City Hotel in Frederick. These fertilizers were to be procured by the plaintiff from the Laza-

retto Guano Company of Baltimore, which from the testimony of the plaintiff is connected with a Fertilizer Trust. The defense which the defendants proposed to make, but which they were not allowed by the Court to present, was substantially this, that neither of the parties intended the written contract to be the real contract between them, and that it did not in fact constitute the true contract; that previous to the preparation of the contract in writing they had agreed upon the price and terms of payment for any quantity of fertilizer they might need for the season's trade, but that when they met in Frederick, the plaintiff represented that it was necessary there should be a written contract showing higher prices than those actually agreed on, as he did not wish the trust from which he purchased the goods to know that he was selling below certain rates fixed by it. He also said he wished the written contract should require the purchase of 1,000 tons in order to swell his apparent sales, but that the defendants were not to be bound to order more than they needed; and that the actual prices to be paid should be fifty cents per ton less than those stated in the paper, except for South Carolina Rock, with a discount of five per cent on the gross amount of purchases.

In attempting to present this defense, twenty-three exceptions were taken, all to rulings upon the admission or striking ont of testimony, and the verdict and judgment being for the plaintiff for the whole amount of his claim, this appeal has been brought.

The principal and controlling question in the case is whether parol evidence of the facts above stated was admissible to show that the written instrument purporting to be the contract was not intended to be, and was not in fact, the real effective contract.

That such testimony was admissible for the purpose for which it was offered in this case we think has been definitely determined in the recent case of *The Southern Advertising Company* v. *The Metropole Shoe Co.*, 91 Md. 61.

The underlying principle of that case had been applied in several cases in Maryland previously, and in other Courts

both in England and America, but the facts in the case re-
ferred to are almost identical with the alleged facts in this
case, and make it unnecessary to cite. otheis at any length.

In that case the written contract sued on required the defend-
ant to advertise its business through the plaintiffs plan for 12
months at $300 per month, whereas the real agreement
between the parties was that the defendants should advertise
with the plaintiff for 3 months at $100 per month, which
agreement had been fully complied with; the parol proof
offered and admitted showed the true terms as above stated,
and that the execution of the written paper was procured upon
the representations of the plaintiffs agent through whom the
true contract was made, that it was a matter of form only,
intended to prevent any outsider from knowing they were sell-
ing advertising space below their published rates, and was not
signed as a record of the real contract.    In affirming the
judgment below for the defendant, this Court said the parol
evidence was properly admitted "because it was offered, not
for the purpose of varying or contradicting the contract, but
to show that the parties to the writing never intended it to be
a contract or as the binding record of a contract," and cited
the case of *Burke* v. *Dulaney*, 153 U. S. 234, in which Mr.
JUSTICE HARLAN said, "The rule that excludes parol evidence in
contradiction of a written agreement; presupposes the exis-
tence in fact of such agreement at the time suit is brought.
But the rule has no application, if the writing was not delivered
as a present contract, and parol evidence was admissible to
show that there never was any concluded binding contract
entitling the party who claimed the benefit of it, to enforce its
stipulations."    The case of *The Southern Advertising Co.* v. *The
Metropole Co.* was approved in the later case of *Wilson* v.
*Pritchett*, 99 Md. 592, and we think is supported abundantly
both by reason and authority.

We do not think it necessary to consider the numerous
exceptions separately.    The 2nd, 3rd, 4th, 5th, 6th, 7th, 8th,
9th, 10th, 11th and 20th were all taken to the exclusion or
striking out of evidence offered to show that the written con-

tract was never intended by the parties to be the real operative contract and was never delivered nor accepted as such. This was a question for the jury to determine from the excluded evidence and there was error in the ruling in each of the above exceptions.

The 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 21st 22nd and 23rd are all based upon rulings of the Court offering to prove either general customs obtaining between dealers in fertilizers or the course of dealing between these parties in those transactions.

Of these exceptions the 14th, 17th, 18th and 22nd relate to general customs in the fertilizer trade, and the 12th, 13th, 15th, 16th, 19th and 21st relate to the course of dealing between these parties.    All bear upon the question of the allowance of the discount of five per cent.

We do not understand from any of the offers of excluded evidence that the written contract differed from the alleged real contract in respect to the language of the clause relating to the discount.  It is well settled that unless the language of the contract is doubtful or ambiguous, proof of usage cannot be received.  This is so because proof of usage is received only on the theory that the parties entered into their contract with reference to such usage, and if such usage should expressly, or by fair implication, contradict the plain language of the contract, it could not be received.    2 *Jones on Evidence*, sec. 472. Where such usage is receivable at all, it may be either of a general usage in that trade or business or in the uniform course of dealing of the party against whom the usage is invoked in his transactions with the other party; the acts and admissions of the parties in the one case, and the general custom of the business in the other being held to enter into the particular contract.  *Citizens Fire Ins. Co.* v. *Doll*, 35 Md. 107; *Mitchell* v. *Wedderburn*, 68 Md. 145.

The question is then whether this clause relating to the time when discount is to be allowed is free from ambiguity, or plain and explicit.

Its language is: "five per cent discount on receipt of cash

in December 1st from date of invoice." The appellant con-
tended that the use of the word *invoice* in that connection
made it uncertain whether that word referred to a general
statement of all shipments made under the actual agreement,
or to the bills of lading which usually accompany each ship-
ment, and that their proffered testimony was admissible to
explain that doubt. But it seems to us that the doubt is only
created by assuming the fact proposed to be proved as a cus-
tom, viz: that an itemized statement of all the dealings should
be furnished before payment could be demanded. The pri-
mary meaning of the word would seem to confine it to each
shipment as made, and to indicate only such information, as
would advise the purchaser of the fact of shipment of par-
ticular goods with the prices and charges for those goods.
The word *invoice* is used in another clause of that writing
which reads as follows: "Should overcharge in freight occur,
the party of the first part (the plaintiff) will upon receipt of
bill of lading and freight receipt make a claim upon the rail-
way company and when collected remit the amount to the
party of the second part. No deductions shall be made nor
allowed from the *invoice* for overcharge on freight unless pre-
viously arranged." If used in that clause in the sense of *bill
of lading* as we think it was there used, the reasonable infer-
ence is that it was used in the same sense in the other clause,
and if so used there, the language is free from doubt or
obscurity, and there is nothing for explanation by proof of any
usage. This is a case in which the Court must "hew to the
line let the chips fall where they may," and we do not feel
that we would be justified in permitting what we regard as
plain language, to be controlled by proof of usage.

The first exception we are informed by the brief was de-
signed to lay the foundation for the admission of proof of
usage, and in this view it may be classed with the exceptions
now under consideration.

It follows that in our view there was no error in the ruling
on the 1st, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th,
21st, 22nd and 23rd exceptions.

But for the errors on the other exceptions the judgment must be reversed.

> *Judgment reversed with costs to the appellants above and below, and new trial awarded.*