RINAUDO ET UX. *v.* BLOOM ET UX.

[No. 42, October Term, 1955.]

2

*Decided February 2, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Henry M. Decker, Jr.,* and *John L. Sanford, Jr.,* with whom was *Daniel T. Prettyman* on the brief, for appellants.

*Thomas F. Johnson,* with whom were *Bernard B. Feikin* and *Justinus Gould* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a judgment for $25,000 and costs rendered in the Circuit Court for Worcester County in favor of Arthur Bloom and his wife Julia May Bloom, appellees, and against Frank J. Rinaudo and his wife Lillian C. Rinaudo, appellants. The suit was brought, following the exercise by the appellees of a right to cancel a contract for the sale of a motor court or "motel", to recover "all deposit monies" alleged to have been theretofore paid by them as purchasers to the appellants, as sellers, under the contract of sale.

The appellants were the owners of certain real estate in Worcester County, located on the south side of U. S. Route 50, approximately one mile west of Ocean City, Maryland, known as "Green Gables Motor Court," which was improved by twenty-one motel units, a coffee shop and a few other buildings. In the spring of 1953, the appellees entered into negotiations with an agent of the appellants, Glenn Steele, a real estate salesman employed by David M. Nichols & Co., regarding the purchase of the appellants' property. On Friday, March 13, 1953, at their home in Baltimore County, the appellees signed a form of contract for the sale of "Green Gables," which had been prepared by Steele. This form of contract stated the price as $85,000, recited that $10,000 had been "paid prior to the signing hereof," and provided for the payment of the balance as follows: $10,000 at the time of settlement (which was to be within 30 days from the date of the agreement) and the remainder in semi-annual payments of $5,000 each over a period of 6½ years, with interest at not more than 6%. At this time, the appellees delivered to Steele a treasurer's check issued by a trust company in Baltimore for $10,000, representing the deposit stated in the contract, payable to the order of David M. Nichols & Co. The appellants were not present on this occasion, and the contract had not been signed

by them. On Sunday, March 15th, the Blooms visited Mr. and Mrs. Rinaudo at "Green Gables," but the contract was not signed by the appellants at that time.

On Monday, March 16, 1953, the next day, the parties met again in the kitchen of the Rinaudo living quarters at the "Green Gables Motor Court." When the Blooms arrived, sometime between 1:00 and 2:30 P.M., Mr. Steele and Mr. and Mrs. Rinaudo already were present. The appellees, Mr. and Mrs. Bloom, were permitted to testify, over objection, that, before Mr. and Mrs. Rinaudo would sign the contract, and while all the parties were gathered around the kitchen table, the sum of $15,000 in cash was paid by Mr. Bloom to Mr. Rinaudo, who then counted the money and handed it to Mrs. Rinaudo. Mrs. Rinaudo then, according to the testimony of Mr. and Mrs. Bloom, admitted over appellants' objections, said to Mr. Steele, "Let's make it legal," or "Pass it under the table to make it look legal," and Mrs. Rinaudo then passed the money under the table to Mr. Steele, who passed it back to her. Mrs. Rinaudo then, according to this testimony, gave the money back to her husband, who got up from the table, walked toward the safe, and put the money in the safe. No receipt for the money was given to the Blooms.

The testimony of Mr. and Mrs. Bloom regarding the payment of the $15,000 was denied by Mr. and Mrs. Rinaudo and by Mr. Steele.

The contract or form of contract which had been signed by the Blooms on March 13th was signed without change (except probably the insertion of the 16th as the date) by the Rinaudos at the meeting on March 16th. According to the appellees it was signed immediately after the $15,000 cash payment had been made and the money had been put in the sellers' safe.

After the contract had been signed, the Blooms and Mr. Steele visited a lawyer in Snow Hill to ask him to represent the Blooms in the settlement. On that day, after conference with the Blooms and a telephone conversation with Mr. Rinaudo, he addressed a letter to the

Blooms and to the Rinaudos setting forth an agreement which undertook to extend slightly the time for payment of the balance of the purchase price. There is no controversy over this agreement.

The contract contained a provision that all deposit money was to be held by David M. Nichols & Co. until the time of settlement and a further provision that "In the event that all present existing licenses are not obtainable by the Buyers, then this Contract shall become null and void and all deposit monies returned to the Buyers."

In April, 1953, the buyers found that they would not be able to secure the transfer of the beer license held by the Rinaudos. Thereupon, through their Baltimore attorney, Mr. Sidney B. Needle, they notified the appellants that they declared the contract null and void and demanded the return of all monies paid in the transaction in the total amount of $25,000. The appellants denied that $15,000 in cash had been paid and admitted only the payment of the $10,000 still held by David M. Nichols & Co. The testimony of Sidney B. Needle was admitted, over objection, that the appellants' real estate agent, Steele, admitted the payment of the $15,000 in cash by the Blooms to the Rinaudos at a conference in Mr. Needle's office. This testimony was contradicted by Mr. Steele and by another representative of David M. Nichols & Co., who had been present at the conference. Also over objection, the testimony of Mrs. Eleanor Stagg, a Worcester County real estate broker, was admitted to the effect that at sometime during the spring of 1954, she heard a discussion between the Blooms and the Rinaudos in regard to the $15,000 allegedly paid to the Rinaudos and heard Mr. Rinaudo tell the Blooms that they could not give them all of the money back. This testimony was contradicted by Mr. Rinaudo.

The first and principal question presented is whether or not parol evidence should have been admitted to show that the appellees paid $15,000 to the Rinaudos before the execution of the written contract which stated the sale price as $85,000, not $100,000. It is quite evident

that the jury believed the testimony offered on behalf of the appellees. The question is, of course, not one of the credibility of this evidence, but whether its introduction was permissible in the face of the parol evidence rule. As has often been pointed out, the very term "parol evidence rule" is really a misnomer because it is not a rule of evidence at all but is a rule of substantive law. *Restatement of Contracts*, Sec. 237; *Williston on Contracts*, Rev. Ed., Vol. 3, Sec. 631; *Corbin on Contracts*, Sec. 573; *Wigmore on Evidence*, 3d Ed., Sec. 2400. As Professor Wigmore states: "It does not exclude certain data because they are for one reason or another untrustworthy or undesirable means of evidencing some fact to be proved. * * * What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all." Therefore, if the parol evidence rule is applicable, no evidence of any kind can be introduced to change the writing.

At this point a rather close examination of the pleadings and of some of the crucial testimony seems advisable, even at the cost of repetition.

The declaration is in three counts. The first and second are, respectively, the common counts for money lent and for money had and received. In response to a demand for the particulars of these counts the plaintiffs stated "the particulars * * * are the same as the claim set forth in the third count of the plaintiff's declaration." The third count sets up a contract by which the plaintiffs agreed to purchase and the defendants agreed to sell Green Gables Motor Court "at and for the sum of one hundred thousand dollars ($100,000)." It then alleges (among other things) that in accordance with the demands of the defendants the plaintiffs "paid as down payment on said property, an aggregate sum of twenty-five thousand dollars ($25,000.00)," of which $15,000 was paid in cash and $10,000 by check, that an agreement of sale was subsequently executed by the parties on

March 16th, 1953, and that "for reasons unknown to the plaintiffs, * * * the defendants elected by said agreement to give credit to the plaintiffs for the fifteen thousand dollars ($15,000) down payment in cash * * * by setting forth the purchase price as eighty-five thousand dollars ($85,000.00)." The declaration also sets forth the clause of the contract with regard to the refund of "all deposit monies" if all existing licenses are not obtainable by the buyers, and alleges that such licenses were not so obtainable, that the contract thereby became null and void, and that the plaintiffs demanded the refund of $25,000, which was refused by the defendants. A photostatic copy of the contract dated March 16th, 1953, was filed with and made a part of the declaration.

A careful examination of the transcript shows that no evidence was admitted at the trial which stated in direct terms that the true consideration for the motor court was $100,000, instead of $85,000. The trial court excluded evidence as to conversations on March 15th and sustained a number of objections to questions relating to conversations leading up to the alleged payment of $15,000 and the signing of the contract by the defendants immediately thereafter. The first point at which testimony was admitted to show a payment in excess of $10,000 was in response to this question put to Mr. Bloom: "What payment have you made on the principal pursuant to this contract dated March 16, 1953?" His answer was "25,000.00." The defendants' objection and motion to strike this testimony were overruled. Thereafter, over further and repeated objections and motions to strike, testimony by or on behalf of the appellees was admitted to show the payment of $25,000 at or before the signing of the contract by the sellers. A practical effect of the admission of this testimony was, we think, to show that the contract price was $100,000, since it seems not to have been challenged that the sum of $75,000 remained unpaid after the delivery of the $10,000 check and the execution of the contract, and the conference with counsel in Snow Hill and his letter based thereon confirm

this balance. The appellees have not and do not contend that their $15,000 cash payment should be credited against an $85,000 purchase price; they have consistently adhered to the position that it was a part payment against a $100,000 purchase price. The admission of the testimony relating to the $15,000 cash payment thus presents, in our view, a question of the applicability of the parol evidence rule to the stated total consideration as well as to the amount acknowledged to have been received at or prior to the signing of the contract.

That rule has been repeatedly recognized and applied in this State, and it is also well settled that where the Statute of Frauds requires a contract to be in writing, the whole contract must be in writing. No extensive citation of authorities in support of these rules would seem useful. See, among many cases which might be cited: *Bladen v. Wells,* 30 Md. 577; *Boyce v. Wilson,* 32 Md. 122; *Merritt v. Peninsular Construction Co.,* 91 Md. 453, 46 A. 1013; *Freeman v. Stanbern Construction Co.,* 205 Md. 71, 106 A. 2d 50; *Lazear v. National Union Bank,* 52 Md. 78; *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19; *Coster v. Arrow Bldg. & Loan Ass'n,* 184 Md. 342, 41 A. 2d 83; *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329; *Kiser v. Eberly,* 200 Md. 242, 88 A. 2d 570.

The appellants rely very heavily upon the above rules.

Among the difficulties pertaining to the parol evidence rule are the rather numerous exceptions to it or situations in which it is held inapplicable. Without attempting an elaborate analysis or citation of cases we may mention some types of cases to which the parol evidence rule is not applied. For example, the consideration stated in a deed may usually be contradicted and the true consideration may be shown by parol. *Koogle v. Cline,* 110 Md. 587, 73 A. 672. The same rule was held applicable to the assignment of policies of life insurance in a case in which the law of Maryland was considered controlling. *Union Central Life Ins. Co. v. Deutser,* 13 F. Supp. 313 (D. C., Md.), affirmed *sub. nom. Deutser v. Marlboro Shirt Co.,* 81 F. 2d 139 (C. C. A., 4th). Parol evidence

is admissible to show that what appears on its face to be a full and complete contract was not intended to be a contract at all. *Southern Street Rwy Adv. Co. v. Metropole Shoe Co.,* 91 Md. 61, 46 A. 513; *Birely & Sons v. Dodson,* 107 Md. 229, 68 A. 488. Parol evidence may be introduced where the written instrument is attacked for fraud. *Hirons v. Hubbell,* 149 Md. 593, 132 A. 645. It may also be adduced in some instances, as where misrepresentations are alleged, to stay the hand of equity in the specific enforcement of contracts. *Williston, Contracts,* Rev. Ed. Vol. 3, Sec. 631. It does not prevent proof of a collateral agreement. It is also usually held that a mere receipt or recital of a fact is subject to explanation or contraction by parol, but it is also said that a recital which is contractual in nature is not open to parol attack. See 20 *Am. Jur., Evidence,* Secs. 1112, 1115.

The parol evidence rule thus can hardly be considered as an all-inclusive and automatic or self-operating rule of law. Its practical application presents many problems.

In the instant case the first question with regard to the applicability of the rule is this: Were all agreements and understandings of the parties as to consideration and the amount paid at or before the signing of the agreement integrated by the written agreement?

We are met at once by the integration clause of the agreement which states in part that "This Contract contains the final and entire Agreement between the parties." As Professor Corbin points out in an article on the *Parol Evidence Rule,* in 53 Yale Law Journal 603, at page 621, even such a clause itself may embody a recital of fact which may be untrue. Doubtless, however, such a clause strengthens, and it may go beyond, the presumption of integration upon which the parol evidence rule proceeds; but it is not invariably conclusive and its coverage is a matter of interpretation.

In *Markoff v. Kreiner, supra,* and *Kikas v. Baltimore County,* 200 Md. 360, 89 A. 625, a three-fold test of what constitutes a "collateral" agreement is stated. Under

this test it is necessary (1) that the agreement be independent, separate and distinct from the original agreement, (2) that it be consistent with the provisions of that contract and (3) that it be such an agreement as the parties could not reasonably be expected to embody in the main contract and would naturally make a separate agreement. The first and third of these requirements tend to shade into each other.

It is evident that the parol agreement alleged in the instant case might run afoul of the tests in the *Markoff* and *Kikas* cases. The trial court did not pursue the course recommended by Professor McCormick in his work on Evidence (p. 441) of hearing testimony out of the presence of the jury on the alleged oral agreement, including the evidence of substantiating circumstances, comparing the oral agreement with the written agreement and then, depending upon whether or not he finds that the agreement was such as might normally be made by parties situated as were the parties to the contract, either admitting the testimony or excluding it from consideration by the jury. For similar views see also *Wigmore on Evidence,* 3rd Ed., Sec. 2430, *Corbin, Parol Evidence Rule,* 53 Yale Law Journal 603, at 628-633. See also *Restatement, Contracts,* Sec. 240. We think that the solution above suggested affords a practical means of applying the tests of the *Markoff* and *Kikas* Cases. The logical difficulty or paradox of determining the applicability of the parol evidence rule by first receiving or considering the evidence is thus obviated by making its original consideration by the court a purely preliminary matter.

Even in the absence of the above described procedure, we are of the opinion that the testimony relating to the $15,000 payment was admissible.

A somewhat narrow reason for this opinion rests upon the exact terms of the clause of the written contract upon which this suit is based. That clause (already quoted in full) provides that upon the contract becoming "null and void" (as it did because the buyers could not themselves

obtain a license to sell beer), "then * * * all deposit monies [shall be] returned to the Buyers." The only deposit money which the contract recites or calls for is the $10,000 payment which is acknowledged. The term "all deposit monies" suggests something more, and is certainly capable of a broader meaning than such a phrase as "the deposit mentioned above" would have. Parol evidence is admissible to explain the meaning of the words used. *Fryer v. Patrick*, 42 Md. 51; *Lambdin v. Dantzebecker*, 169 Md. 240, 181 A. 353. Where the consideration for a conveyance is expressed as so many dollars "and other good and valuable consideration," the true consideration may be shown. *Drury v. State Capital Bank*, 163 Md. 84, 161 A. 176.

In *Harris v. Paddison*, 2 H. & Mc.H. (1789), suit was brought by the administrator of the payee on a promissory note signed by the defendant which read as follows: "Received, November 30th, 1778, from Abraham Pitt, the sum of three thousand four hundred pounds, which I promise to pay him or his order, on demand, for value received." The defendant offered evidence to show that the note had been given on the deposit of certain money for safe-keeping under an agreement that the specific (Continental) money which had been deposited was to be returned on demand. This evidence was held admissible by the General Court and by the Court of Appeals. No opinion by either Court is reported, but permitting the terms of the instrument to be explained would appear to be a ground upon which the decision may have been rested.

It may be objected that the contract required by another clause that "all deposit money" should be held by the real estate firm "until the time of settlement for the mutual benefit of all parties concerned." On the appellees' version of what took place, it is evident that this clause was not complied with so far as the $15,000 payment was concerned. We see no reason, however, for permitting the sellers to set up their non-compliance with this clause, even though acquiesced in by the pur-

chasers, as a bar to the purchasers' claim for the return of the deposit monies which they claimed to have put in the hands of the sellers, rather than in the hands of the real estate agents.

We do not, however, rest our decision solely upon the ground above stated, but also upon the ground that the testimony was admissible under a real or apparent exception to the parol evidence rule.

Before taking up the case upon which the appellees rely most heavily, we may observe that we regard the price as a most important contractual term and not as a mere recital. See *Grubb v. Rockey*, 366 Pa. 592, 79 A. 2d 255; *Rafferty v. Butler*, 133 Md. 430, 105 A. 530. In each of these cases the price stated in a written contract of sale was held within the matters protected by the parol evidence rule.

The case principally relied on by the appellees is *Dinsmore v. Maag-Wahmann Co.*, 122 Md. 177, 89 A. 399. In that case the appellee sold a bake oven under a conditional contract of sale to one Keppler. The contract stated the purchase price of the oven to be $275.90, payable in instalments of $25.00 monthly. Appellant sued out an attachment against Keppler and the oven was seized thereunder, was sold and the proceeds were paid into court. The appellee claimed that the oven was not subject to attachment. The conditional contract of sale was put in evidence and, over the objection of the attaching creditor, parol evidence to show that the actual price was $450.90 and that an old oven was accepted in part payment at $125.00 and that $50 had been paid in cash. The appellant contended that the admission of this testimony contravened the parol evidence rule. In the appellee's brief in this court the contention was made that the evidence was admissible to show the meaning which the parties intended to express by the terms employed, but the appellee also urged that the question was immaterial and the admission of this evidence constituted at most only harmless error. The issue as to price as between the conditional seller and the attaching creditor was

pertinent only as to the amount still due the seller. That net amount would, of course, be the same whether one started with an original price of $450.90 and deducted all credits and payments made at any time or whether one started with the contract price of $275.90 and deducted payments thereafter made. The appellee contended that there was no dispute as to the amount of the consideration, but the appellant's brief sought to apply the total credits (including the trade-in allowance on the old oven and the $50 paid before the signing of the contract) against the price of $275.90 set out in the contract. There was no dispute, however, as to the times and amounts of payments.

This court, in an opinion by Judge Pattison, said, in *Dinsmore v. Maag-Wahmann Co., supra:* "We find no error in the ruling of the Court in admitting this testimony. The price or amount that the Maag-Wahmann Company charged and received for ovens of this size and character was $450.90, and this was the amount at which they had negotiated with Keppler for the oven sold to him, but that amount had been reduced, prior to the execution of the contract, by the acceptance of the old oven, at an allowance therefor of $125, and a cash payment of $50, leaving $275.90 owing by Keppler at the time the contract was executed, and it was for the payment of this amount in monthly instalments that this contract provided. It was the price or amount to be paid in monthly payments before he was to acquire title to the property mentioned in the contract. The admission of this testimony we think is entirely proper and in no sense violates the general rule of law that forbids a written instrument to be varied, added to, or explained by parol testimony."

Unfortunately, the court did not amplify this conclusion by spelling out its reasoning or citing any authorities in support thereof. The case is, however, the nearest on its facts to the instant case of any which we have been able to find, but it is not identical. It is, of course, immaterial, insofar as the applicability of the parol evi-

14

dence rule is concerned, whether, as here, the facts sought to be shown by extrinsic evidence were in dispute, or as in the *Dinsmore Case,* they were not in dispute.

There is an obvious similarity between the appellant's contention in the *Dinsmore Case* that no evidence could be adduced to show that the price stated in the contract of sale was the net amount unpaid at the time of execution of the contract and the appellants' contention in the instant case. In the *Dinsmore Case* there was no acknowledgment in the written contract of the receipt of any part of the sale price; in the instant case there is such an acknowledgment of the receipt of a part of the stated sale price—that is, of a part of the net price remaining unpaid at the time of the execution of the contract. But if parol testimony is admissible, as the *Dinsmore Case* holds, to show that the stated amount of the purchase price is a net amount and how it is arrived at, it seems equally admissible to show how the amount of consideration stated to have been received is arrived at.

The *Dinsmore Case* recognizes one more real or apparent exception to the parol evidence rule by allowing extrinsic proof of the original price and of credits allowed against it prior to the execution of the written contract in arriving at the net price stated therein. Implicit in this holding there seems to be the underlying holding that the admission of such testimony explains, rather than contradicts, the terms of the written contract; and to carry it one step further back, the agreement which has been integrated by the writing may be considered as consisting only of the terms which remain executory at the time of the signing and delivery of the written contract; and the requirement of completeness under the Statute of Frauds (which was applicable to the contract in the *Dinsmore Case,* though no issue based upon it was raised) may thus be met.* On this theory the tests of

* The similarities and differences between the Statute of Frauds and the parol evidence rule are succinctly summarized in Professor Corbin's article on the Parol Evidence Rule, 53 Yale Law Journal 603, at 609-610.

the *Markoff* and *Kikas Cases* are, as a practical matter, in large part satisfied. Some such theory, though not expressed, may have underlain the decision in the *Dinsmore Case,* and the result seems just. Suppose, for example, that in the *Dinsmore Case* the purchaser had had good cause to rescind the contract and did so. Should his recovery have been limited to payments made after the execution of the written contract? So, in the instant case, on rescission, should recovery be limited to the amount acknowledged by the written contract to have been received?

In *Mahoney v. Mackubin,* 54 Md. 268, parol evidence was offered to show that of a total consideration of $45,000 for a deed, $15,000 was to be made up by the purchasers paying off a $15,000 mortgage to which the property was subject. The agreement with regard to payment of the mortgage was shown by parol. At pages 273-274, this Court said: "But we see no difficulty whatever in allowing such proof to be introduced. It merely shows how the stated consideration was made up and how it was to be paid, and in nowise alters, varies or affects the deed itself. But even if such be the effect of this proof, still having been admitted in the court below without exception to its admissibility or competency, it must be considered and allowed by this court to have that effect." Though not precisely in point on the facts, this statement tends to support the *Dinsmore Case* holding that parol evidence was admissible to show how the stated consideration was arrived at.

In several cases involving bills and notes, parol evidence of an agreement not expressed therein has been admitted. In *Leonard v. Union Trust Co.,* 140 Md. 192, 117 A. 318, and in a companion case under the same names, 140 Md. 203, 117 A. 322, parol evidence was held admissible to show that an indorser had indorsed a note in reliance upon an agreement that a certain fund would be applied to its payment and no such application had been made. These holdings were based upon a failure of consideration. See also *Harris v. Paddison,* 2 H. &

Mc.H. 252, already cited, in which parol evidence was held admissible to show an agreement that only the specific money which had been deposited by the payee with the maker of the note sued on was to be returned. The *Deutser Case* already cited (13 F. Sup. 313, aff., 81 F. 2d 139), held admissible parol evidence to show the real consideration for a note and the assignment of life insurance policies, notwithstanding that such parol evidence contradicted the consideration recited in the note and assignment. In all of these bills and notes cases, in practical effect as well as in theory (with the possible exception, as to theory, of *Harris v. Paddison*), the exceptions to the parol evidence rule seem at least as great as in the *Dinsmore Case*.

In practical effect, though not in theory, the exception in the *Dinsmore Case* does not go beyond, if as far as, the exception recognized in such cases as *Southern Street Rwy. Advertising Co. v. Metropole Shoe Mfg. Co.*, 91 Md. 61, 46 A. 513, and *Birely & Sons v. Dodson*, 107 Md. 229, 68 A. 488, where parol evidence was admitted to show that the written contract was not the contract. It may also be noted that in each of those cases, some misleading or deception of third parties was an objective of one of the parties and that this objective was known to the other. In the *Advertising Co. Case*, the purpose was to lead other prospective advertisers to believe that the Shoe Company had committed itself to a much larger advertising contract than it had actually done; in the *Birely Case* the object was to conceal from the seller's suppliers the fact that he was selling to the purchasers at a lower price than what the contract indicated. Though the record in the instant case is notably silent as to any explanation of the reason for stating a net consideration in the contract, it is difficult to escape an idea that concealment from some third party was at least one, if not the only, objective. However, no defense involving any such question has been interposed.

The *Advertising Co.* and *Birely Cases* do not go beyond holding that parol evidence was admissible to show

that the written agreement was not intended to be a contract; and because the buyers in those cases had performed what they said was the oral agreement, they did not have to touch the question whether these oral agreements were enforceable against the buyers. (Cf. *Koogle v. Cline, supra,* where the grantees stood upon the grant contained in a deed, but successfully refuted, with the aid of parol evidence, any obligation to pay the consideration recited in the deed, which was admittedly unpaid.) In the instant case the buyers have elected to stand on the contract in order to exercise the right of rescission and to demand the return of "all deposit monies" consequent thereon. The pleadings consequently do not present the question whether they could, as in the *Advertising Co.* and *Birely Cases,* have offered parol evidence to show the contract not to have been the agreement of the parties, and could thereafter have shown the amounts paid and then stood simply upon a count for money had and received. See *Colonial Park Estates v. Massart,* 112 Md. 648, 77 A. 275.

Unless the *Dinsmore Case* is to be overruled, the exception which it recognized appears to be controlling in this case; and we are not prepared to overrule it. We note that in the years which have intervened since its decision approximately forty years ago, no other case involving that precise exception, so far as we are informed, has come before this Court, so that it does not seem to have loosed a flood of similar litigation, though many of the arguments in support of the application of the parol evidence rule which are based upon possible encouragement of unworthy claims can be invoked against the *Dinsmore* exception.

The appellants also object to the admission of Mr. Needle's testimony as to an admission made by Mr. Steele. This objection is based upon the ground that at the time of the conversation Mr. Steele's agency for the Rinaudos had terminated. We do not think that it had. The contract had not been consummated and the date for settlement had not arrived, nor had it been declared

by the Blooms to be of no further effect.

A third ground upon which the appellants base their appeal is a derogatory remark about the appellants volunteered by Mrs. Bloom during the course of her testimony and the refusal of the trial court to declare a mistrial because of it. This matter was within the discretion of the trial court, and we find no abuse of its discretion. On the contrary, we think that the trial court dealt with the matter promptly and adequately by making it clear that no such comments would be tolerated.

In accordance with the foregoing views the judgment will be affirmed.

*Judgment affirmed, with costs.*