## DELLA RATTA ET UX. *v.* HARKINS

[No. 182, September Term, 1972.]

*Decided February 8, 1973.*

---

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Joseph F. Gartlan, Jr.,* with whom was *Steven A. Skalet* on the brief, for appellants.

No brief filed on behalf of appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

The appellee (Harkins) sued the appellants (Della Ratta) to enforce the collection of a $13,500 note. Della Ratta counterclaimed. The trial judge, Miller, J., sustained objections to the evidence offered by Della Ratta in support of his counterclaim. From the ensuing judgment for costs against him (and his wife) Della Ratta has appealed. He argues here that the proffered evidence was admissible. We agree. There is no appeal from the judgment on the note.

The nature of his counterclaim can best be exposed by the edited version which follows:

1. On 19 December 1969 Della Ratta, Harkins, and Behrl Hirschman agreed in writing to form a joint venture.
2. On 18 February 1970 the same three agreed in writing to terminate the joint venture and to provide for certain other related matters.
3. As an additional consideration for the execution of the 18 February agreement by Della Ratta, Harkins promised to assign and deliver to him certificates of stock representing his one-half interest in Equity Land Co., Inc. (Della Ratta owned the other half interest.)
4. Della Ratta has performed or has provided for the performance of all of his undertakings.
5. Harkins has refused to deliver the stock. Wherefore Della Ratta prayed for the delivery of the stock, or the value thereof, plus damages.

The learned trial judge, after having sustained every objection to the evidence offered by Della Ratta to prove his counterclaim, asked counsel if he wished "to make a proffer." Counsel replied affirmatively and stated that Della Ratta "would, if permitted, testify substantially [edited] as follows:"

On 7 November 1969 Equity Land Co., Inc. entered into a contract (Defendant's Exhibit No. 1 for identification) with the Prince George's County Housing Authority for the construction of certain improvements on the land therein described, and the conveyance of that property by Equity Land Co., Inc., to the Authority with the completed improvements 425 days after 7 November 1969.

On 19 December 1969 Della Ratta, Behrl Hirschman and Harkins formed a joint venture

(Plaintiff's Exhibit No. 1) for the purposes set forth therein.

Pursuant to the provisions of the December agreement a construction contract dated 7 January 1970 (Defendant's Exhibit No. 2) was entered into between Equity Land Co., Inc., and Thomas P. Harkins, Inc., which called for completion of the improvements within 10½ months of the issuance of the notice to proceed thereunder.

That agreement was submitted with all the other closing documents to the construction lender, the Maryland National Bank, which required, among other things, that it be modified to provide for the completion of the improvements within the time required by the Housing Authority, namely, 425 days after November 7.

When Della Ratta brought these circumstances to Harkins's attention he (Harkins) stated he would have to consider whether his company could comply with that agreement for the time of performance.

Della Ratta discussed this further with Harkins who indicated he was not willing to change the time for performance fixed by his contract whereupon Della Ratta said, "We will have to get another contractor."

Harkins, as a member of the joint venture, declined to agree to that, but ultimately agreed to Della Ratta's forming a company to act as the builder of the project.

In those discussions it became clear that Harkins was getting out of the joint venture and he agreed to give up his interest in the Equity Land Co., Inc., by transferring it to Della Ratta as soon as approval could be obtained from the Housing Authority as required by the contract.

A meeting was held in the office of Andrew Isaacson (who was present in court during the proffer) where a number of the documents involved in the closing of the construction loan with Maryland National Bank were examined and reviewed and at that time, in Isaacson's presence and in Harkins's presence, Della Ratta confirmed the agreement that he and Harkins had made in respect of the ultimate transfer of the Equity Land Co., Inc., stock, as soon as the Housing Authority's permission could be obtained.

The transaction closed on the basis of the oral understanding that Della Ratta had with Harkins.

Della Ratta went to the Housing Authority and obtained its approval of the transfer of the stock. Subsequently he came to Harkins and requested the transfer, indicating the Housing Authority had approved, but Harkins refused.

The executive director of the Housing Authority, Mr. Schmelich (who was present in court), would corroborate, if permitted, Della Ratta's testimony to the effect that he sought and obtained the Housing Authority's approval of the transfer of the stock.

"This [counsel concluded] is the proffer of the substance of the evidence we would offer to support the existence of a binding agreement between Harkins and Della Ratta that related to the transfer of the stock of Equity Land Company which is the subject matter of the counter-claim in this case, and I would now ask the Court if Your Honor is ruling as to whether that line of testimony a moment ago would be applicable to that evidence? If it is, I would rest my case, sir, after noting my objection to the Court's ruling."

Judge Miller replied that he did "not feel that this is a collateral oral agreement which is an exception to the parol evidence rule . . . ." It is an attempt by Della Ratta, he said, "to vary by parol evidence the terms of a written agreement . . . ."

That parol evidence will not be admitted to vary or contradict the terms of an integrated written instrument is too well established to require the citation of authority. But there are equally well established exceptions, one of which is the "collateral" oral agreement. In *Rinaudo v. Bloom*, 209 Md. 1, 9-10, 120 A. 2d 184 (1956), Chief Judge Brune, for the Court, said:

"In *Markoff v. Kreiner, supra* [180 Md. 150, 23 A. 2d 19 (1941)], and *Kikas v. Baltimore County*, 200 Md. 360, 89 A.[2d] 625 [1952], a three-fold test of what constitutes a 'collateral' agreement is stated. Under this test it is necessary (1) that the agreement be independent, separate and distinct from the original agreement, (2) that it be consistent with the provisions of that contract and (3) that it be such an agreement as the parties could not reasonably be expected to embody in the main contract and would naturally make a separate agreement. The first and third of these requirements tend to shade into each other."

In respect of the application of the "three-fold" test, Judge Brune went on to say:

"It is evident that the parol agreement alleged in the instant case might run afoul of the tests in the *Màrkoff* and *Kikas* cases. The trial court did not pursue the course recommended by Professor McCormick in his work on Evidence (p. 441) of hearing testimony out of the presence of the jury on the alleged oral agreement, including the evidence of substantiating circumstances, comparing the oral agree-

ment with the written agreement and then, depending upon whether or not he finds that the agreement was such as might normally be made by parties situated as were the parties to the contract, either admitting the testimony or excluding it from consideration by the jury. For similar views see also *Wigmore on Evidence,* 3rd Ed., Sec. 2430, *Corbin, Parol Evidence Rule,* 53 Yale Law Journal 603, at 628-633. See also *Restatement, Contracts,* Sec. 240. We think that the solution above suggested affords a practical means of applying the tests of the *Markoff* and *Kikas* Cases. The logical difficulty or paradox of determining the applicability of the parol evidence rule by first receiving or considering the evidence is thus obviated by making its original consideration by the court a purely preliminary matter." *Id.* at 10.

In the case at bar the chancellor refused to hear the evidence but, as has been seen, he allowed the proffer which, in our judgment, at least as presented by counsel in the case at bar, is equally satisfactory. In *Hughes v. Averza,* 223 Md. 12, 18, 161 A. 2d 671 (1960), Judge Horney, for the Court, said:

".  .  . Ordinarily, an exception to the exclusion of evidence may only be presented and reserved for appellate review by first asking the witness a proper and pertinent question, and then, upon objection thereto, by stating to the court in a somewhat detailed summary what the testimony would have been had the witness been permitted to answer the question.  .  .  ."

To the same effect *see Canatella v. Davis,* 264 Md. 190, 286 A. 2d 122 (1972) ; *Sellman v. Sellman,* 236 Md. 1, 9, 202 A. 2d 372 (1964).

Perhaps, at this point, it should be observed that Della Ratta does not argue that Harkins's refusal to deliver the Equity Land stock must be treated as a failure of

consideration in respect of the $13,500 note. Indeed, in August 1972 Della Ratta paid Harkins $15,520.50 in satisfaction of his judgment on the note together with interest to date and all court costs. Harkins, several months thereafter, moved to dismiss Della Ratta's appeal contending the satisfaction of the judgment had mooted it. In November, after we had heard argument we dismissed the motion. Della Ratta, it seems, wants only to go to trial on his counterclaim.

He argues that the February agreement does not on its face purport to be a "complete, final and integrated memorial of the parties' business relations." He points to the following recital:

> "Whereas, various other obligations and liabilities (written and oral) have been incurred in connection with said Housing Authority Project; . . ."

He contends also that "far from being inconsistent, the oral agreement was perfectly consistent, and even a necessary complement to the written [February] agreement." Our reading of the record suggests to us that probably he has put it about right, but, of course, upon remand he may have to shore up his contention with more detailed evidence.

We think it reasonable to suppose, and the evidence to be offered upon remand very well may provide solid support therefor, that one might not expect the alleged oral agreement between Della Ratta and Harkins, in respect of the stock, to be embodied in the main contract (February agreement) ; and we think it would be natural for them to make a separate agreement in this regard. In the first place it would not have been of any interest to Hirschman and, indeed, quite likely it was none of his business. Another reason, sufficient in itself perhaps, was the prohibition against transfer in the Housing Authority contract and the expressed necessity for obtaining its approval which, it will be recalled, Della Ratta did obtain some time thereafter.

There are a number of opaque spots in this record, a condition which we expect will be dissipated, upon remand, by clarifying testimony. Therefore, we shall forego any speculative comment in this regard. However, when we recall the earnest and forceful presentation of Harkins's counsel at the hearing on the motion to dismiss we cannot but think it odd that there was neither brief nor appearance for him when the case was argued on the merits.

The judgment in favor of Harkins against Della Ratta and his wife for costs in the matter of their counterclaim will be reversed and the case will be remanded for a new trial thereon.

*Judgment reversed.*

*Case remanded for a new trial.*

*Costs to abide the result below.*