WILLIAM L. WALDE ET AL. *v.* CAPITAL MORTGAGE
INVESTMENTS

[No. 102, September Term, 1978.]

*Decided November 13, 1979.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*M. Michael Cramer,* with whom were *Joseph W. Pitterich, Michael J. Budow* and *Levitan, Ezrin, Cramer, West & Weinstein, Chartered* on the brief, for appellants.

*Jacob A. Stein,* with whom were *Gerard E. Mitchell* and *Stein, Mitchell & Mezines* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The broad question in this case is whether the trial court erred in granting summary judgment for the plaintiff, Capital Mortgage Investments (CMI). The specific issues relate to (1) the res judicata effect of an order ratifying a mortgage foreclosure sale and (2) the application of the parol evidence rule.

On August 10, 1973, CMI agreed to lend $2,960,000.00 to L & S Investment Co., Inc. (L&S), in order for L&S to acquire, rehabilitate and sell, as condominiums, certain townhouses

and garden apartments located in Montgomery County, Maryland. L&S by its president, Gerald Lilienfield, executed a promissory note and a deed of trust covering property in Montgomery County as security for the note. Seven individuals, including the petitioner, William L. Walde, signed the note and a separate guaranty agreement by which they personally guaranteed the payment of all monies due under the note.

After approximately one year, L&S ceased making the payments required by the note. CMI notified L&S by letter that the loan was in default, and when L&S failed to cure the default, the loan was accelerated pursuant to the note. A trustees' sale was conducted at which CMI, the only bidder, purchased the project for $1,650,000.00. A deficiency of $948,020.22 remained. A final order of ratification was entered on August 20, 1975.

CMI subsequently filed a declaration against L&S and the guarantors to recover the deficiency. The defendants denied that they were liable and, in addition, filed counter-claims alleging that CMI, through its representative, Arthur L. Westcot, a vice president involved in loan procurement, entered into an oral agreement with L&S providing that, under certain circumstances, additional funds in excess of the amount of the note could be loaned.

The counter-claims were based upon oral representations allegedly made by Westcot to Lilienfield during the initial negotiations for the loan, and repeated at the time of the execution of the loan agreement, when Lilienfield stated that the amount of the loan would not provide sufficient funds to complete the project. Westcot, at those times, as well as several times subsequent to the execution of the deed of trust, note and guaranty agreement, allegedly agreed that, if the schedule of projected selling prices of the units, which schedule had been submitted to CMI as part of the loan application, were increased, and if contracts for the sale of such units at the increased prices were obtained, then the amount of the loan would be raised so that it "would be equal to eighty (80%) percent of the difference between the projected selling prices of such units and the new selling

prices established for such units under bona fide sales contracts therefor." It was further alleged that L&S agreed to these terms, did raise the selling price of the units above the initial schedule, performed rehabilitation work on the units beyond the scope of the work originally planned because of the higher selling prices, and entered sales contracts with purchasers at such higher prices. The counter-claim alleged that CMI, when requested to loan the additional funds, failed to do so because it was having financial difficulties, and that this failure caused L&S to default on the loan. Finally, it was alleged that the individual guarantors were induced to sign the note and the guaranty agreement because of this separate oral contract.

CMI filed a motion for summary judgment, supported by affidavits, seeking judgment in its favor on all claims and counter-claims. The defendants opposed the motion, and filed various affidavits and depositions, including an affidavit by Westcot, supporting their allegations concerning the existence and terms of the oral agreement. The trial court thereafter granted CMI's motion for summary judgment. The trial court's decision appeared to rest on two grounds: (1) the ratified foreclosure sale was res judicata as to the liability of the individual defendants; (2) alternatively, the parol evidence rule barred any defense or counter-claim based upon the alleged oral agreement.

The defendant Walde took an appeal to the Court of Special Appeals, and this Court issued a writ of certiorari prior to a decision by the Court of Special Appeals. However, the case was dismissed as premature because the circuit court's "judgment" had not disposed of all claims in the case and thus was not appealable. Maryland Rule 605 a. After an appealable judgment was entered, Walde again took an appeal to the Court of Special Appeals,[1] and then filed a petition for a writ of certiorari prior to any proceedings in the Court of Special Appeals. Because we had previously taken the case, we granted the petition.

---

1. Walde was the only defendant who filed an order of appeal from the final judgment.

(1)

To the extent that the trial court's decision against the petitioner Walde was grounded upon the theory that the ratified foreclosure sale was res judicata, the decision was clearly wrong. In fact, the respondent CMI does not dispute this; it merely argues that the trial court's decision was not based upon a res judicata theory.

It is, of course, settled that the ratification of a foreclosure sale does finally determine certain issues against a mortgagor. *See, e.g., Hersh v. Allnutt,* 252 Md. 513, 519, 250 A.2d 629 (1969); *Ed Jacobsen, Jr., Inc. v. Barrick,* 252 Md. 507, 511, 250 A.2d 646 (1969); *Gerber v. Karr,* 231 Md. 180, 186, 189 A.2d 353 (1963); *Bachrach v. United Cooperative,* 181 Md. 315, 322, 29 A.2d 822 (1943); *Albert v. Hamilton,* 76 Md. 304, 309-310, 25 A. 341 (1892). However, the order ratifying the sale does not establish personal liability to pay the underlying debt, *Bainder v. Bldg. & Loan Assn.,* 161 Md. 597, 158 A. 2 (1932). In *Bainder,* after pointing out that a foreclosure proceeding "is against the mortgaged property alone" (161 Md. at 603), the Court continued (*id.* at 604):

> "The effect of that decree [ratifying the foreclosure sale] was to establish the mortgage debt as a valid and subsisting debt enforceable against the mortgaged property, but not to establish the personal liability of Bainder for the payment of that debt. That question cannot arise unless and until the mortgagee, by a petition or motion for a decree *in personam* or other appropriate proceeding attempts to establish that liability, and while the fact, if it is a fact, that the mortgagee discharged Bainder from any personal liability for the debt would be relevant in such a proceeding, it is not relevant in a proceeding to distribute the proceeds of a sale of the mortgaged property after the sale has been finally ratified. For the mortgage debt and the personal liability of the mortgagors for the payment of that debt are different things . . . ."

*Cf. Bentley v. Beacham,* 91 Md. 677, 47 A. 1024 (1900);

*McDonald v. The Workingmen's Building Association,* 60 Md. 589 (1883).

Although Rule W75 b 2 does provide that, in a foreclosure proceeding, "[a] motion for a deficiency decree may be made by a party in interest who would be entitled to maintain an action at law upon the covenants of the mortgage for such deficiency," CMI made no such motion.[2] Moreover, a motion for a deficiency decree against Walde could not have been made under Rule W75 b 2 because he was a guarantor and not a party to the deed of trust. Thus, in the language of the rule, he could not have been sued "upon the covenants of the mortgage for such deficiency." Instead, the liability of one in his position can only be determined in an action at law on the note and guaranty agreement. This was decided by *Kushnick v. Bldg. & Loan Assn.,* 153 Md. 638, 139 A. 446 (1927), involving a statute worded like Rule W75 b 2. The Court there stated (153 Md. at 643-644):

> "Assuming . . . that the appellant's contract is one of guaranty only, he could not have been sued on the covenants of the mortgage, because they were not his covenants, but he must have been sued on his contract of guaranty, for that was the only contract he made. . . . The statute only contemplates the entry of such a decree against the parties to the proceeding, but a guarantor not bound by the covenants contained in the mortgage usually is neither a proper nor a necessary party to a proceeding to foreclose . . . and no action at law can be maintained against him on its covenants.
>
> "We are not dealing here with the right of a mortgagee to secure a judgment at law against guarantors, but upon his right to a deficiency decree in a special statutory proceeding brought to foreclose the mortgage. Although the decisions are in conflict, such authority as there is in this state tends to support the rule stated in *Dunkley v. Van*

---

2. Rule W77 a makes Rule W75 b 2 applicable to the foreclosure of a deed of trust.

*Buren,* 3 Johns. Ch. 330, that . . . such a decree could not be entered in a foreclosure proceeding. . . ."

*Cf. Kirsner v. Mortgage Co.,* 154 Md. 682, 141 A. 398 (1928).

Consequently, the order ratifying the foreclosure sale did not determine Walde's liability.

(2)

The trial court held that evidence of the alleged oral agreement to increase the amount of the loan under certain conditions, and CMI's alleged breach of that agreement, was inadmissible, and could furnish no basis for a defense or counter-claim, because of the parol evidence rule. Walde, on the other hand, argues that the oral agreement was "collateral" to the written agreement, and, as such, was not barred by the parol evidence rule.

More than a century ago this Court recognized that ordinarily "parol evidence is admissible to prove any collateral, independent fact, about which the written agreement is silent; because such proof is perfectly consistent with, and does not in the least tend to contradict, vary or explain the written instrument." *McCreary v. McCreary,* 5 G. & J. 147, 157 (1833). Since then, this principle has regularly been applied, in a variety of situations, to uphold the admissibility of collateral oral agreements which do not contradict the written instruments. *E.g., Della Ratta v. Harkins,* 268 Md. 122, 299 A.2d 777 (1973); *Chertkof v. Spector Balto. Terminal,* 263 Md. 550, 558, 284 A.2d 215 (1971); *Rinaudo v. Bloom,* 209 Md. 1, 9-10, 120 A.2d 184 (1956); *Stallings v. Gottschalk,* 77 Md. 429, 433, 26 A. 524 (1893); *Fusting's Exc'rs v. Sullivan,* 41 Md. 162, 169-170 (1874); *Basshor & Co. v. Forbes,* 36 Md. 154, 165-166 (1872); *Creamer v. Stephenson,* 15 Md. 211, 222 (1860); *Dorsey v. Eagle,* 7 G. & J. 321, 331-332 (1835).

The factors to be considered in determining whether an oral agreement is "collateral" have been stated somewhat differently, although upon analysis there appears to be no real inconsistency among the cases. In the earlier cases, it

was usually said that evidence of such an agreement was admissible if it did not "alter, vary, or contradict the written contract" but concerned "an independent collateral fact, about which the written contract was silent." *Fusting's Exc'rs v. Sullivan, supra,* 41 Md. at 169. *See also Basshor & Co. v. Forbes, supra,* 36 Md. at 165-166 (where Judge Alvey for the Court pointed out that the oral agreement "had reference to a collateral matter, and about which the contract was silent" and that "proof is admissible of any collateral parol agreement, or independent fact, which does not *interfere with the terms of the written contract,* though it may relate to the same subject-matter"). Some of the more recent cases have repeated a so-called "three fold test" initially set forth in *Markoff v. Kreiner,* 180 Md. 150, 155-156, 23 A.2d 19 (1941):

> "Accordingly the three fold test for determining whether a prior or contemporaneous oral agreement between the parties to a written contract is admissible as a collateral agreement is: (1) whether it is an independent collateral agreement separate and distinct from the main contract; (2) whether it is consistent with the provisions of the contract; and (3) whether it is such an agreement as the parties could not reasonably be expected to embody in the contract, but would naturally make as a separate agreement."

Although the third of the above-quoted factors might seem to introduce a somewhat more stringent requirement, the cases point out that "[t]he first and third of these requirements tend to shade into each other." *Della Ratta v. Harkins, supra,* 268 Md. at 127; *Chertkof v. Spector Balto. Terminal, supra,* 263 Md. at 558; *Rinaudo v. Bloom, supra,* 209 Md. at 10.

If the alleged oral agreement in the instant case were merely a promise by CMI to loan a greater amount of money than set forth in the various written documents, it clearly would not meet the tests of a "collateral" agreement as set forth in the above-cited decisions. It would not concern an

independent matter about which the contract was silent. It would not be consistent with the written agreement. It would not be something which the parties would naturally embody in a separate agreement. Instead, the alleged oral contract inducing the guaranty would contradict the provisions of the written documents setting forth the total amount of the loan.

However, the nature of the alleged oral agreement in this case is quite different from a mere promise to loan a greater sum of money than set forth in the written contract. The written loan agreement of August 10, 1973, expressly referred to a " 'Schedule of Sales Prices,' attached hereto as 'Exhibit A' and incorporated herein by reference." The language goes on to indicate that the borrower is to adhere to the schedule. Thus, the amount of the loan set forth in the written contract appears to be premised upon a particular schedule of sales prices for the condominiums. The alleged oral agreement, as described in the affidavits submitted on behalf of the defendants, was not inconsistent. If the schedule of sales prices remained the same, the oral agreement apparently would not become viable. The total amount of the loan would remain as set forth in the original written agreement.

The oral agreement was premised upon a different set of facts than the written. It related to a different situation. According to the affidavits, including the affidavit of CMI's vice president, Westcot, the oral agreement was as follows: *If* the schedule of sales prices of the units were *increased* over and above the schedule of prices incorporated in the written contract, and *if* contracts for the sale of the units at the higher prices were obtained, *then* CMI would loan an amount "equal to eighty (80%) percent of the difference between the projected selling prices of such units and the new selling prices established for such units under bona fide sales contracts therefor."

In our view, this alleged oral agreement is "collateral" and not barred by the parol evidence rule. It is separate from the written contract, covering circumstances different from those upon which the written contract was premised. It is not unreasonable for such an understanding to be embodied in a

separate agreement. The written agreement simply did not deal with the situation contemplated by the alleged oral agreement, namely a higher schedule of selling prices than that incorporated into the written agreement. The oral agreement does not vary or contradict the terms of the written agreement; instead, one agreement provides for a loan of a particular amount based upon one set of circumstances, and the other agreement contemplates a loan of a different amount based upon a different set of circumstances.

In sum, the affidavits filed on behalf of the defendants were sufficient to raise a triable issue of fact concerning the existence and nature of a collateral oral agreement not barred by the parol evidence rule. Thus, summary judgment should not have been granted. *Honaker v. W.C. & A.N. Miller Dev. Co.,* 285 Md. 216, 231-232, 401 A.2d 1013 (1979), and cases there cited.

> *Judgment reversed and case remanded for trial.*
> *Respondent to pay costs.*